[Crim. No. 20498. Apr. 24, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
HUMBERTO N. VALLES, Defendant and Appellant.

## COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Jeffrey K. Jayson and Barry D. Utsinger for Defendant and Appellant.

Quin Denvir, State Public Defender, Gary S. Goodpaster, Chief Assistant State Public Defender, and Richard E. Shapiro, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington, Karl J. Phaler and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CLARK, J.**—Defendant appeals from judgment of conviction for unlawful possession of heroin. (Health & Saf. Code, § 11350.) We affirm.

At close of trial, the jury having been instructed, the following colloquy occurred concerning status of the alternate juror:

"[THE COURT:] Now, gentlemen, could we—would you be willing to stipulate that the alternate juror be sequestered with the other jurors with the admonition that she not participate in the discussions verbally, but that she listen and sit quiet and mind her own business, so in the event it is necessary for her to sit in for somebody else, the jury deliberations will not have to start out from the very beginning.

"[DEPUTY DISTRICT ATTORNEY] THOMPSON: I would be willing to stipulate to that.

"[DEPUTY PUBLIC DEFENDER] JOHNSON: So stipulated.

"THE COURT: All right, then, Mrs. Everett, I want to advise you that you are still an alternate juror. You dare not intrude your opinions into the jury deliberations. You shall listen very carefully to what is being said, hold your temper. In the event it is necessary for you to replace one of the other jurors during the course of deliberations, then you won't have to—the other jurors won't have to start all over with their deliberations. In the event that a verdict is reached without your services being required, that means you are just going to have to sit there and be patient even if you don't agree with what is going on. Okay?

"MRS. EVERETT: Fine."

It did not become necessary for Mrs. Everett to substitute for a regular juror.

No claim is made that the alternate disobeyed the court's instructions by participating in any manner in the jury's deliberations. Nevertheless, defendant contends the alternate's mere presence in the jury room during deliberations constituted reversible error. We conclude defendant is estopped from raising this issue by his stipulation to the procedure.

The leading decision in California on the propriety of an alternate's presence in the jury room during deliberations is *People* v. *Britton* (1935) 4 Cal.2d 622 [52 P.2d 217]. In *Britton* this court approved *People* v. *Bruneman* (1935) 4 Cal.App.2d 75 [40 P.2d 891]—a then recent Court of Appeal opinion presenting "the identical question." "We are of the view," the *Britton* court wrote, "that [*Bruneman*], written by Mr. Presiding Justice Conrey, now an Associate Justice of this court, thoroughly presents the situation and determines the question. On the authority of that decision, on which the District Court of Appeal rested the present decision, we believe that further consideration by this court is unnecessary." (4 Cal.2d at p. 622.)

This court then set forth and adopted as its own the opinion prepared by the Court of Appeal in *Britton,* which stated in pertinent part: " 'Appellants claim reversible error because when the jury retired to deliberate the court directed that the alternate juror should retire to the juryroom with the jury, and that this was error even though the court instructed such alternate juror that while she might listen to the deliberations of the jury, she should not express any opinion or participate by word or action in those deliberations. [¶] Subsequent to the appeal herein this identical question was decided in [*Bruneman*] and we agree with the conclusions therein stated, that the presence of the alternate juror in the juryroom while the jury was deliberating upon its verdict was reversible error.' " (4 Cal.2d at p. 623.)

In *Bruneman,* pursuant to stipulation of counsel, the trial court ordered two alternate jurors to accompany the twelve regular jurors to the jury room and instructed that they should listen to discussion of the other jurors but that they were not to talk and were not to address the regular jurors on any subject. The following questions were considered by the Court of Appeal: " 'Was the presence in the jury room, of the "alternate jurors", to whom the case had not been submitted for decision, an invasion of the right of trial by jury; and was it an invasion of that right in such a vital way that the error could not be cured by consent of the defendant's attorney?' " (4 Cal.App.2d at p. 80.) The court concluded, first, that the presence of the alternate jurors in the jury room during deliberations was an invasion of the defendant's constitutional right to trial by jury, and, further, "that this was an error so far destructive to the invaded right, that the error could not by mere consent be rendered harmless." (*Id.* at p. 81.)

The second question considered by the Court of Appeal in *Bruneman* was not before this court in *Britton* for there is no indication of a stipulation in that case. Considering the question now as a matter of first impression in this court, we conclude the presence of alternates in the jury room during deliberations is not necessarily detrimental to a defendant's right of trial by jury and that defense counsel may stipulate to such procedure.

In support of its contrary conclusion the *Bruneman* court relied upon cases from other jurisdictions holding that the mere presence of *an officer of the court* in the jury room during deliberations vitiates the verdict. (4 Cal.App.2d at pp. 80-81.) The persuasive value of the out-of-state authority was sharply questioned in scholarly commentary at the time. "Underlying the strict rule of these cases are two reasons: first, that the mere presence of a non-juror might restrict frank and honest comment by the jurors; second, that the facial expressions and other reactions of the non-jurors might influence the verdict, even though the non-jurors make no verbal comment. [Fn. omitted.] But this reasoning, though it may be valid when the intruder is a total stranger, loses its force when the intruder is an alternate juror chosen in the same way as a regular juror, subjected to the same test of impartiality, and required to possess all the qualifications of a regular juror. There is no reason to believe that the presence of an alternate would in any way restrict honest comment by the jurors or prejudice the defendant." (Comment, *Criminal Law: Alternate Jurors: Substitution After Submission of Case: Presence During Deliberations of Jury* (1936) 24 Cal.L.Rev. 735, 738.)

Nor was *Bruneman* adopted by this court without dissent. "No possible injury was sustained by the defendant by reason of the presence in the juryroom of the alternate juror during the deliberations of the jury. It is presumed that she obeyed the instructions of the court, and if so, the verdict was not in any way influenced by her or by her presence in the juryroom during the deliberations of the jury. . . . It may have been error to permit the alternate juror to be present during the deliberations of the jury, but as the defendant sustained no injury thereby, the judgment should not be reversed for such error." (*People* v. *Britton, supra,* 4 Cal.2d at pp. 623-624 (Curtis, J., dis.).)

Contending that "the presence of an alternate cannot be cured by consent of counsel," the amicus brief filed by the State Public Defender asserts that the *Bruneman* rule "prevails in almost every other jurisdiction." Most of the cases upon which amicus relies must be distinguished

on the ground that the jurisdictions involved, unlike California, have statutes or rules requiring dismissal of alternate jurors upon final submission of the case to the jury.[1] (*United States* v. *Lamb* (9th Cir. 1975) 529 F.2d 1153 (Fed. Rules Crim.Proc., rule 24(c); 18 U.S.C.); *United States* v. *Beasley* (10th Cir. 1972) 464 F.2d 468 (same rule); *United States* v. *Virginia Erection Corporation* (4th Cir. 1964) 335 F.2d 868 (same rule); *Berry* v. *State* (Fla.App. 1974) 298 So.2d 491 (statute); *State* v. *Bindyke* (1975) 288 N.C. 608 [220 S.Ed.2d 521] (statute); *Patten* v. *State* (1968) 221 Tenn. 337 [426 S.W.2d 503] (statute); *State* v. *Cuzick* (1975) 85 Wn.2d 146 [530 P.2d 288] (statute).)

Of the remaining five cases relied upon by amicus, four must be distinguished on the ground that those states, unlike California, had statutes expressly providing that alternate jurors were not to be in the jury room during deliberations.[2] (*Glenn* v. *State* (1962) 217 Ga. 553 [123 S.Ed.2d 896]; *State Highway Com.* v. *Dunks* (1975) 166 Mont. 239 [531 P.2d 1316]; *People* v. *King* (1961) 216 N.Y.S.2d 638 [13 App.Div.2d 264]; *Commonwealth* v. *Krick* (1949) 164 Pa.Super. 516 [67 A.2d 746].) The fifth and last case, *Brigman* v. *State* (Okla. Crim. 1960) 350 P.2d 321, must be distinguished on the ground that the alternate there participated in the deliberations at least until the first ballot.

---

[1]Prior to amendment in 1933, section 1089 of the Penal Code provided that alternate jurors "shall be discharged upon the final submission of the case to the jury." (Pen. Code, § 1089, as amended by Stats. 1927, ch. 630, § 2, p. 1063.) Since 1933, however, section 1089 has provided for substitution of an alternate for a regular juror, upon a showing of good cause, "at any time, whether before or after the final submission of the case to the jury."

[2]Section 1089 is silent on this point. It provides in relevant part: "[Alternate jurors] shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff or marshal during the trial of the cause, such alternate jurors shall also be kept in confinement with the other jurors; and upon final submission of the case to the jury such alternate jurors shall be kept in the custody of the sheriff or marshal and shall not be discharged until the original jurors are discharged, except as hereinafter provided. [¶] If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

In *Bruneman* the Court of Appeal concluded that the presence of alternates in the jury room during deliberations was contrary to the intent of the statute. "[U]nder the 1933 amendment, the same as before, it was not until after the discharge of the disqualified regular juror and the drawing of the name of the alternate, that the alternate juror was to 'take his place in the jury box'. We are satisfied that in enacting section 1089 of the Penal Code . . . the legislature did not intend to, and in fact did not, authorize the court to admit into the jury room, 'alternate jurors', under the circumstances shown by the record in this case." (4 Cal.App.2d at p. 79.)

The *Bruneman* court attached too much significance to the lanaguage it quoted. The

By contrast, in *Johnson v. State* (1977) — Ind. — [369 N.Ed.2d 623], the Supreme Court of Indiana found no error in permitting a properly instructed alternate to listen to the deliberations of the regular jurors. "[A]n alternate juror is in every respect a juror. [Citation.] He has been accepted through voir dire examination and has been with the jury throughout the trial of the case, receiving and being required to observe the various admonitions of the trial judge as to jury behavior. At any time during the trial or deliberations the alternate juror may immediately take the place of one of the original twelve jurors and function as fully as any other member of the jury. Thus he should not be considered as a stranger to the jury or an outsider who should not be permitted to be in the presence of the original twelve jurors during their deliberations. There is no more a presumption that the alternate juror would favor conviction than that he would favor acquittal. We therefore hold that the alternate juror may, in the discretion of the trial court, be sent with the original twelve jurors to the jury room during their deliberations so long as the trial court properly instructs him that he is not to participate in the deliberation unless it becomes necessary for him to replace one of the original twelve jurors." (*Id.* at p. 625.)

In *Potter v. Perini* (6th Cir. 1976) 545 F.2d 1048, a federal habeas corpus proceeding involving an Ohio prisoner, the court of appeals held that the right of jury trial protected by the federal Constitution is not violated by the presence of an alternate in the jury room during deliberations; the court noted that the Ohio courts had reached the same conclusion under the state Constitution.

■ A statement made by the court of appeals in *Potter v. Perini* serves to sum up this case. "There was no showing of any participation by [the alternate juror] in the deliberations, or that her presence had any effect on the other jurors, or that her presence was prejudicial in any respect to the rights of the appellee." (545 F.2d at p. 1049.) For these reasons we hold that a defendant may not complain on appeal of the presence of an alternate juror in the jury room during deliberations when his counsel stipulates to the procedure. Toward expediting disposition of a case, the court and counsel may well determine that the particular case calls for such innovation.

---

fact that section 1089 provides that an alternate is not to "take his place in the jury box" until after the discharge of the disqualified regular juror and the drawing of the alternate's name, does not necessarily indicate that permitting a properly instructed alternate into the jury room during deliberations is inconsistent with legislative intent.

■ The alternate should, of course, be instructed that he is not to participate in the jury's deliberations in any manner except by silent attention unless he is required by the court to take the place of an original juror. If this instruction is disobeyed, the standard rule concerning juror misconduct applies, namely, that it is presumed prejudicial to the defendant unless the contrary appears. (See *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050].) If the alternate is substituted for an original juror during deliberations, the jury should be instructed to begin its deliberations anew to the extent necessary to permit the former alternate to fully participate. (See *People* v. *Collins* (1976) 17 Cal.3d 687 [131 Cal.Rptr. 782, 552 P.2d 742].)

Defendant's remaining contention concerning instructional error has been fully considered and found to lack merit.

The judgment is affirmed.

Tobriner, J., Richardson, J., Manuel, J., and Newman, J., concurred.

**MOSK, J.**—I dissent.

Four and a half decades ago it was firmly established in California that the presence in the jury room of alternate jurors to whom the case had not been submitted for decision was an invasion of the defendant's right of trial by jury. (*People* v. *Bruneman* (1935) 4 Cal.App.2d 75 [40 P.2d 891].) And, said the court at that time, "we further conclude that this was an error so far destructive to the invaded right, that the error could not by mere consent be rendered harmless" (*id.* at p. 81).

This elementary rule of law has gone unchallenged since 1935, when, in the same year that *Bruneman* was decided, we approved the identical principle in *People* v. *Britton* (1935) 4 Cal.2d 622 [52 P.2d 217]. As recently as 1976, a unanimous opinion of this court again emphasized that after final submission of the cause the alternates "are sequestered apart from the deliberating jurors." (*People* v. *Collins* (1976) 17 Cal.3d 687, 694 [131 Cal.Rptr. 782, 552 P.2d 742].) It would seem that the rule would be well known to and routinely respected by trial judges, and, indeed, it has been prior to this case. Thus it is with a feeling of *deja vu* that we face again the precise factual circumstances of *Bruneman.* Without persuasive explanation, however, the majority now jettison nearly 45 years of precedent and misread Penal Code section 1089 in

order to adopt a radically different rule authorizing an invasion of the defendant's right of trial by jury on the mere consent of counsel.

I turn first to the statute governing the use of alternate jurors in criminal prosecutions, Penal Code section 1089. As originally enacted (Stats. 1895, ch. 213, p. 279), the section provided that if the regular jurors are ordered sequestered during the course of the trial the "alternate jurors shall also be kept in confinement with the other jurors." This, of course, is still the practice: alternates are taken out to meals by the sheriff together with regular jurors, and if the jury is held overnight all are quartered in the same facilities. The section further provided that the alternate jurors "shall be discharged upon the final submission of the case to the jury."

In 1933 a significant amendment was adopted (Stats. 1933, ch. 521, p. 1342), drastically changing the treatment of alternates when jury deliberations begin: "and upon final submission of the case to the jury such *alternate jurors shall be kept in the custody of the sheriff* and shall not be discharged until the original jurors are discharged, except as hereinafter provided." (Italics added.) Thereafter provided was a paragraph dealing with substitution of an alternate for an original juror. Similar provisions are contained in Code of Civil Procedure section 605 for civil cases.

The procedure devised by the Legislature is thus clear and uncomplicated: when the case is submitted to the 12 regular jurors and they retire for their private deliberations, the alternate jurors do not retire with them but remain with the sheriff and are retained in his custody until the original jury is discharged by the court. This has been the practice of our trial judges since 1933.

*Bruneman* arose shortly after the 1933 amendment was adopted. Defense counsel in the case was the eminent criminal lawyer of that era, Jerry Giesler. The trial judge recognized (4 Cal.App.2d at p. 77) that the new amendment required the alternates to be kept in the custody of the sheriff during deliberations; nevertheless, "in order to determine the meaning of the 1933 amendment" he requested counsel to stipulate that the alternates could accompany the regular jurors into the jury room. Giesler and the prosecutor obligingly so stipulated.

It is essential to note the underlying purpose of the *Bruneman* trial judge in asking for the stipulation: i.e., "if one or more of [the alternates] should have to act, it probably would be desirable that they hear the discussions of the other jurors up to that point." (*Id.* at p. 77.) That

purpose would be futile today, however, in view of our explicit holding in *People* v. *Collins, supra,* 17 Cal.3d at page 694, that "a proper construction of section 1089 requires that deliberations begin anew when a substitution is made after final submission to the jury." To insure this step we further required the trial judge in such event to instruct the jury "that the law grants to the People and to the defendant the right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict; that this right may only be assured if the jury begins deliberations again from the beginning; and that each remaining original juror must set aside and disregard the earlier deliberations as if they had not been had." (*Ibid.*) We recently declared an identical rule in civil actions. (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578 [153 Cal.Rptr. 213, 591 P.2d 503].)

Despite this crystal-clear admonition, a year after *Collins* the trial judge herein repeated the *Bruneman* error of inviting counsel to stipulate to inclusion of the alternate in the jury room "so in the event it is necessary for her to sit in for somebody else, *the jury deliberations will not have to start out from the very beginning.*" And directly contrary to *Collins,* he proceeded to instruct that "In the event it is necessary for you to replace one of the other jurors during the course of the deliberations, . . . *the other jurors won't have to start all over* with their deliberations." (Italics added.) Our plain message in *Collins* had obviously not reached this judge.

The Court of Appeal in *Bruneman* was unimpressed by the fact that counsel had stipulated to the procedure adopted, for it found the error to have been an invasion of the defendant's right of trial by jury. Consent, it held, could not render the error harmless. (4 Cal.App.2d at p. 81.) In the case at bar the People likewise rely on consent of counsel—not of defendant personally—but here the majority erroneously conclude that the attorney's stipulation cures the defect. For this startling departure the majority offer no reasoned analysis of their own, but merely quote from a student comment, from the dissent in *Britton* (which concedes that the presence of an alternate during deliberations is error), and from two out-of-state cases. I would adhere to California precedent, and on the following grounds I would hold that the error affecting the conduct of the jury persists with or without counsel's consent.

There are at least three elements of jury deliberations that are, or may be, affected by the presence in the jury room of a nonparticipant, who may be described as any person to whom the case has not been submitted for a verdict.

First, a fair jury trial càn be achieved only if the jury is insulated from outside communications or influences. (*Parker* v. *Gladden* (1966) 385 U.S. 363 [17 L.Ed.2d 420, 87 S.Ct. 468]; *Rakes* v. *United States* (4th Cir. 1948) 169 F.2d 739, 745.) Such communications, even if subtle or unintended, are nonetheless an adulteration of the pristine character of the jury function. It would be understandably difficult for an alternate to remain locked up with regular jurors, perhaps for days, without at some time, during heated discussions, reflecting agreement or disagreement, support or opposition, encouragement or disapproval, praise or derision, hope or frustration, or any of countless other emotions. Even if only one regular juror observed such a response on the part of the alternate—not necessarily from his speech, but from his gestures, attitude, or facial expressions—it could well have a tilting effect on the ensuing vote.

Second, the mere presence of a nonparticipant during jury deliberations is likely to have an inhibiting effect upon the free flow of discussion. To permit outsiders in the jury room "not faced with the awful responsibility to decide" (*State* v. *Cuzick* (1975) 85 Wn.2d 146 [530 P.2d 288, 290]) creates the danger that those who must decide will be deterred from expressing themselves fully. This may influence the verdict "to an extent which cannot be seen or measured" (*People* v. *Bruneman, supra,* 4 Cal.App.2d at p. 81), but which is nonetheless real.

Third, though no law prohibits disclosure, it is preferable that the inevitable meandering of jury deliberations remain confidential. In his 1956 Hamlyn Lecture, Lord Patrick Devlin declared that "What goes on in the jury room is not only to be subject to no interference but it is also to be kept secret." Though conceding that there are no cases on the subject, Lord Devlin noted that "it says a good deal for the sense of responsibility of the average juror that it never seems to have been necessary to decide the point." (Devlin, Trial by Jury (1956) p. 46.) The reticence of the regular jurors to reveal discussion confidences may not be equally felt by the alternates. In *People* v. *Adame* (1973) 36 Cal.App.3d 402, 407 [111 Cal.Rptr. 462], the court cited with approval—indeed, it italicized for emphasis—this quotation from *People* v. *Knapp* (1879) 42 Mich. 267 [3 N.W. 927, 929]: "The presence of a single other person in the room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out."

For the foregoing reasons I believe there were jury misconduct and error here. I therefore reach the issue of prejudice. *Bruneman* adopted a per se rule of reversal. Both before and since that time, however, our

courts have reviewed a variety of other types of jury misconduct, and in each instance the error has been weighed on the scales of prejudice. The general rule in this state is that a presumption of prejudice arises from jury misconduct. (*People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050], and cases cited.) The United States Supreme Court has also adopted a rule of presumptive prejudice. (*Remmer* v. *United States* (1954) 347 U.S. 227, 229 [98 L.Ed. 654, 655-656, 74 S.Ct. 450].) The presumption may be rebutted by proof that no prejudice actually resulted (*In re Winchester* (1960) 53 Cal.2d 528, 535 [2 Cal.Rptr. 296, 348 P.2d 904]), but the effort to do so must be conducted within statutory limitations. (Evid. Code, § 1150.)

There is no rational reason to distinguish the error involved here from any other case of juror misconduct. (*People* v. *Adame, supra,* 36 Cal.App.3d at p. 411 (conc. opn. of Brown (G. A.), P. J.).) I would therefore apply the general rule and hold that a presumption of prejudice arose in the case at bar. And because the People made no effort to rebut that presumption, I would reverse the judgment under the authorities discussed herein.

Bird, C. J., concurred.

Appellant's petition for a rehearing was denied May 23, 1979. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.