[Civ. No. 41859. First Dist., Div. One. May 22, 1981.]

THEODORE GIOUZELIS, Plaintiff and Appellant, v.
DOLLE MURRAY McDONALD, Defendant and Respondent.

438

COUNSEL

Robert E. Cartwright, Cartwright, Sucherman, Slobodin & Fowler and Derry Ellen Rivendale for Plaintiff and Appellant.

Donald H. Kincaid, Patrick J. Hagan and Kincaid, Gianunzio, Caudle & Hubert for Defendant and Respondent.

OPINION

**GRODIN, J.**—On June 7, 1970, plaintiff suffered injury as a result of an accident involving a car in which he was riding as a passenger and a car driven by defendant. He sought recompense in an action for negligence against both drivers, but his efforts in that regard have produced negligible rewards. He settled with the driver of the automobile in which he was riding for a nominal amount prior to trial;[1] his first trial against defendant ended with a hung jury; and a second trial resulted in a defense verdict.

---

[1] The settlement for $500 was entered into prior to *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], holding California's guest statute unconstitutional. It is undisputed that the settlement was in good faith.

It is from the judgment on that verdict that plaintiff, doggedly seeking a third chance, now appeals. He contends that the trial court erred in instructing the jury as to comparative negligence, in allowing the jury to begin deliberations without the presence of one of the jurors, and in denying his motion for a new trial; and that these errors have resulted in a miscarriage of justice requiring reversal. His arguments on appeal are skillfully and forcefully presented; but we conclude that under applicable rules there was no reversible error, and affirm.

The presentation of evidence at the trial consumed 14 days. We summarize here only the essential evidence relevant to this appeal.

The accident occurred at about 8:55 p.m. at the intersection of Route 29 and Airport Road in Napa. Plaintiff was returning home from a church picnic in a car driven by Peter Alevras, and their vehicle was proceeding south in the fast lane on Route 29 at approximately 65 miles per hour, which was the legal speed limit at the time. Defendant, returning home with her husband after dinner at a restaurant, had driven east on Airport Road and was making a left turn into Route 29 when the accident occurred. There was a stop sign on Airport Road at the intersection, and according to defendant she stopped her vehicle, and allowed a chain of cars travelling south to pass. Then: "I looked to the left. I didn't see any car lights coming. I started to go across. There were some way down the road, but not near where I was. I had plenty of time, as I thought, to cross ... I actually didn't see the car [driven by Alevras] except I sort of felt something there, but there were no lights. I didn't see any lights." Alevras' vehicle, swerving to the left, then nicked defendant's car and crashed into a wooden utility pole which stood in the middle of the gravel divider separating the two southbound and two northbound lanes.

1. Did the trial court's comparative negligence instructions constitute prejudicial error?

Prior to trial, a question arose as to whether the comparative negligence principles of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] required that the jury consider asserted negligence on the part of Alevras in arriving at its verdict. This court had ruled in *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 235-236 [132 Cal.Rptr. 843], that *Li* did not modify Code of Civil Procedure section 877 (which provides that release of one tortfeasor results in reduction of claims against other tortfeasors

claimed to be liable for the same tort in the amount stipulated by the release); but the trial court expressed doubt as to whether *Stambaugh* applied where the release occurred after suit was brought against all tortfeasors. To be safe (it thought) the trial court decided that it would instruct the jury that if it found negligence on the part of defendant and also on the part of Alevras, it should allocate recovery on a comparative basis. Then, the trial court reasoned, if the Court of Appeal should decide that comparative principles did not apply, the percentage of negligence (if any) allocated to Alevras could be reallocated to defendant, and reduction in recovery made only for the amount of the settlement with Alevras.

Accordingly, and over plaintiff's objection, the trial court instructed the jury to return a special verdict by making findings on the following issues:

COURT'S PROPOSED JURY INSTRUCTION NO.—

Comparative Negligence—Direction for Special Verdict

You are directed to return a special verdict by making findings on the following issues in accordance with this instruction upon a form that will be given to you.

*Issue No. 1.* Was there some negligence on the part of the defendant which was a proximate cause of injury to the plaintiff?

If you have answered issue No. 1 "No," then you need deliberate no further, you need not answer any of the other issues and your verdict will thereby be in favor of the defendant. If you have answered issue No. 1 "Yes," then answer the next issue.

*Issue No. 2.* Without taking into consideration the question of reduction of damages due to the negligence, if any, of Peter Alevras, the driver of the car in which plaintiff was riding, what do you find to be the total amount of damages sustained by the plaintiff as a proximate result of the accident?

If you have answered issue No. 1 "Yes," then answer the next issue.

*Issue No. 3.* Was there some negligence on the part of Peter Alevras, the driver of the car in which plaintiff was riding, which contributed as a proximate cause of injury to plaintiff?

If you have answered Issue No. 3 "No," then you need not deliberate further on the conduct of Peter Alevras, and you need not answer issue No. 4.

If you have answered Issue No. 3 "Yes," then answer Issue No. 4.

*Issue No. 4.* The combined negligence of the defendant and of Peter Alevras, the driver of the car in which plaintiff was riding, whose negligence proximately contributed to the injury being 100%, what portion of such combined negligence is attributable to the defendant and what portion is attributable to Peter Alevras?

Plaintiff contends, and defendant concedes, that at least in light of subsequent authorities comparative negligence principles are inapplicable in a situation such as was presented here, and that "a plaintiff's recovery from nonsettling tortfeasors should be diminished only by the amount that the plaintiff has actually recovered in a good faith settlement, rather than by an amount measured by the settling tortfeasor's proportionate responsibility for the injury." (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899]; see also *Jaramillo* v. *State of California* (1978) 81 Cal.App.3d 968, 970-971 [146 Cal.Rptr. 823]; *McGee* v. *Cessna Aircraft Co.* (1978) 82 Cal.App.3d 1005, 1020-1022 [147 Cal.Rptr. 694].)

The question before us is whether the procedure which the trial court chose for preserving the issue posed by plaintiff's settlement with Alevras was likely to have confused or misled the jury to such an extent as to require reversal. On the facts of this case, the answer is negative.

The trial court explained the special verdict form to the jury, line by line, and then read it to them. The court made clear that "[a] plaintiff who was injured as a proximate result of some negligent conduct on the part of a defendant is entitled to recover compensation for such injury from that defendant. Thus, the plaintiff is entitled to a verdict in this case if you find, in accordance with my instructions: 1) That defendant was negligent, and 2) That such negligence was a proximate cause of injury to the plaintiff." The court read to the jury from Vehicle Code sections 21802, subdivision (a) and subdivision (b), and 22450, pertaining to the duty of a driver approaching a stop sign at the entrance to an intersection to stop and yield the right of way to approaching vehicles "until such time as he can proceed with reasonable safety," and instructed the jury in effect that if it found that defendant violated these

provisions, and that the violation was a proximate cause of injury to another, then the jury was to find the defendant negligent unless she proved by a preponderance of evidence that she did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances, who desired to comply with the law.

The court also instructed the jury that, should they reach the question of Alevras' negligence, the burden of proving that he was negligent and that his negligence contributed as a proximate cause to plaintiff's injuries was upon the defendant. It made clear, however, that if they answered the first question (whether there was "some negligence" on the part of defendant which was a proximate cause of injury to plaintiff) in the negative, then the jury need not deliberate further, and its verdict "would be judgment for the defendant all the way."

The jury deliberated for approximately two hours, and returned a special verdict on the first question only, answering it in the negative. In accordance with the court's instructions, it never reached the remaining issues.

Plaintiff argues that the jury was undoubtedly confused by the idea "that [plaintiff's] driver ... was also being tried along with defendant." Nothing in *American Motorcycle Assn., supra,* 20 Cal.3d 578, however, or in the other authorities offered by plaintiff, precludes a jury's consideration of the conduct of a nonpresent settling tortfeasor in determining whether other defendants were guilty of negligence which proximately caused injury to the plaintiff; and in a case like this such consideration would appear to be unavoidable. Indeed, as defendant notes, it was plaintiff's counsel who first injected Alevras' conduct as an issue in the case through examination of defendant as to how fast plaintiff's car was travelling and whether it had lights.

Plaintiff's trial counsel argued to the jury that defendant was entirely at fault for the accident, and that Alevras was guilty of no contributing negligence. Defendant's counsel, on the other hand, emphasized to the jury that it was going to be asked, "first of all, [to] reach a decision on whether [defendant] was negligent ... If you decide that she did under those circumstances exercise ordinary care, that is all the further you go." [*Sic.*] He suggested, in that regard, that the most likely explanation for the accident in view of the evidence was that defendant did use due care, but that either plaintiff's car was travelling at an excessive rate of speed, "too fast to slow or to stop in what would be a normal

distance for a car going within the speed limit," or "his lights weren't on for one reason or another." These would have been appropriate considerations for the jury with or without instructions on comparative negligence. Plaintiff's counsel responded that the excessive speed theory was not in accord with the physical evidence, and that the no-lights theory did not square with defendant's own earlier deposition testimony and her statements to the police immediately after the accident. The jury apparently found in accordance with one or both of defendant's theories, and while the record is certainly susceptible of a contrary determination, plaintiff does not contend that it lacks substantial evidence to support the jury's conclusion.

This is not a case "in which the jury has been precluded by erroneous instructions from considering a valid theory upon which a result different from that actually reached might have been supported." (*Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628, 643-644 [228 P.2d 897]; see also *Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 808 [13 Cal.Rptr. 401, 362 P.2d 33].) And, unlike the situation in *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652 [320 P.2d 500], the comparative negligence instruction in this case could hardly have misled the jury into believing that there existed a "separate ground of nonliability of the defendant." (*Id.*, at p. 660.) The court here was scrupulously careful in explaining to the jury that comparative negligence was an issue to be reached only if they found defendant to be negligent, and that condition was not met. We cannot say that it is reasonably probable that a result more favorable to the plaintiff would have been reached in the absence of the instructions complained of. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

2. Did the trial court commit reversible error in instructing the jury to choose a foreman and to proceed with deliberations *in the absence of one of the jurors*?

Before instructing the jury, the court announced as follows: "We have one little thing to put on the record, and that is Mr. Pottinger, one of our Jurors, has an eye this morning that is all inflamed. Apparently a blood vessel broke or something, and he has made a doctor's appointment. I talked with the doctor, too, and so what we will do, the Court will instruct and then while you people are getting started with your deliberations he will go up there and be back and should be ready to deliberate. So that is the way we anticipate it will go."

Then the court asked: "Both attorneys have said this is agreeable, right?"; and both attorneys, on the record and in open court, stated, "That is correct."

The court then proceeded to instruct the jury. After doing so, it stated: "Now, I would suggest that when Mr. Pottinger goes to the doctor, you go ahead and elect your foreman and start your deliberations. But I would suggest that you not take a ballot—this is merely a suggestion—until he gets back because it would not be a complete one until he is here. He will not be gone too long. His doctor is all set to receive him, handle him, and send him back. And only in the event that it were something more serious and more than what it is, I think, and the doctor would have to keep him, only then would the alternate juror come into play.... With this in mind we will leave you and you can commence deliberating on this case. And Mr. Pottinger, you can leave right now under our stipulation."

The record reflects that the jury retired to commence deliberations at 10:10 a.m., that it returned to the courtroom at 12:05 p.m. with a 10-2 defense verdict; that the jurors were individually polled; and that juror Pottinger voted with the majority. The record does not reflect how long juror Pottinger was absent, or whether deliberations had in fact commenced prior to his return.

Plaintiff contends that the trial court erred in instructing the jury to choose a foreman and begin deliberations without the 12th juror and to continue when he returned. Relying upon *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 584-585 [153 Cal.Rptr. 213, 591 P.2d 503], he argues that the court should have instructed the jury that upon Mr. Pottinger's return they should have commenced deliberations anew.

*Griesel* held that when an alternate juror is substituted after deliberations have commenced, the court must instruct the jury to disregard all past deliberations and begin deliberating anew. The court had previously reached the same result in a criminal case. (*People* v. *Collins* (1976) 17 Cal.3d 687, 691 [131 Cal.Rptr. 782, 552 P.2d 742].) In concluding that the *Collins* principle applied to a civil context as well, the court reasoned: "The right to a jury trial in civil cases is also guaranteed by article I, section 16 of the California Constitution [fn. omitted], and the provisions of the statute governing the substitution of jurors in civil cases (Code Civ. Proc., § 605) are the same as the ones governing criminal cases (Pen. Code, § 1089). *The same considerations require*

*that each juror engage in all of the jury's deliberations in both criminal and civil cases. The requirement that at least nine persons reach a verdict is not met unless those nine reach their consensus through deliberations which are the common experience of all of them."* (*Griesel v. Dart Industries, Inc., supra,* 23 Cal.3d at p. 584; (italics added.)

We accept that the reasoning in *Griesel* would preclude the procedure followed in this case absent consent. In fact, however, counsel for both parties stipulated, expressly and in open court, to the trial court's statement of the results of an off-the-record discussion concerning the procedure to be followed, and that statement quite clearly called for the jury to begin its deliberations *without* juror Pottinger. For the trial court to instruct the jury that it should nevertheless begin its deliberations anew after juror Pottinger returned would be plainly inconsistent with that understanding, as well as with the court's further suggestion (as to which no objection was raised) that the jury not take a ballot until Pottinger returned.

Plaintiff's counsel had the right, of course, to insist that Pottinger be dismissed and that deliberations commence with the alternate juror. That he did not do so was attributable, we assume, to his relative assessment of the two jurors in terms of his client's interests. In any event, we opine that he had the authority to bind his client to the option which he selected. In *Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler* (1938) 12 Cal.2d 98 [81 P.2d 913], overruled on other grounds, *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 790, 792 [100 Cal.Rptr. 385, 494 P.2d 9], the Supreme Court held that an attorney did not violate his professional obligation by demanding a jury trial over the express objection of his client: "[I]t is well established law that the attorney has complete charge and supervision of the procedure that is to be adopted and pursued in the trial of an action; and in accordance with that law, if [the attorney] wished to have a jury trial he had a right to insist that the trial be so conducted." (*Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler, supra,* 12 Cal.2d at p. 105.) And in *People* v. *Valles* (1979) 24 Cal.3d 121, 127 [154 Cal.Rptr. 543, 593 P.2d 240], the court held that in a *criminal* case "a defendant may not complain on appeal of the presence of an alternate juror in the jury room during deliberations when his counsel stipulates to the procedure."

While in a criminal case a waiver of jury must be by both defendant and his counsel, and it has been held that the same rule applies to a consent to be tried by a jury of less than 12 (cf. *People* v. *Dyer* (1961)

188 Cal.App.2d 646, 649 [10 Cal.Rptr. 613]), that rule derives from the constitutional mandate that "[a] jury may be waived in a criminal cause by the consent of *both parties expressed in open court by the defendant and the defendant's counsel.*" (Cal. Const., art. I, § 16; italics added.) By contrast, the same section of the Constitution provides that "[i]n a civil cause a jury may be waived by the *consent of the parties expressed as prescribed by statute*" (italics added), and that "[i]n civil causes the jury shall consist of 12 persons or a lesser number *agreed on by the parties in open court.*" (Italics added.) Pursuant to this provision the Legislature, in Code of Civil Procedure section 631, has enumerated several means by which a jury trial may be waived, including written consent filed with the clerk or judge (subd. 2), and oral consent in open court (subd. 3). The record reflects oral consent here. Plaintiff's counsel on appeal has cited us to no authority requiring the personal consent of a litigant to waiver of jury trial or to consent to trial by less than 12 jurors in a civil case and our research has disclosed no such authority. Moreover, although we do not premise our conclusion upon this ground, it appears highly unlikely, in view of the vote, that Pottinger's earlier presence in the deliberations would have produced a different result. (*People* v. *Watson, supra*, 46 Cal.2d 818.)

The judgment is affirmed.

Newsom, J., concurred.

**RACANELLI, P. J.**—I respectfully dissent.

A close review of the record in light of governing principles inexorably warrants the conclusion that the failure to grant a new trial on the grounds of legal errors constituted a prejudicial abuse of discretion requiring reversal. Against an evidentiary background strongly probative of respondent's actionable fault, the manifest instructional and procedural errors loom weighty in support of a determination that a miscarriage of justice has resulted.

While arguably it might appear unreasonable to hold the trial court accountable for its failure to anticipate doctrinal development of comparative negligence principles confirming statutory exclusion of liability apportionment to a good-faith settling cotortfeasor (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 604 [146 Cal.Rptr. 182, 578 P.2d 899]; *Stambaugh* v. *Superior Court* (1976) 62 Cal.App. 3d 231, 235-236 [132 Cal.Rptr. 843]), no reasons existed justifying the

perpetration of the predictably harmful effect of such clearly erroneous instructions calculated to confuse and mislead the jury. The injection of such an illusory issue into an otherwise uncomplicated negligence action, grounded upon established right-of-way rules, by an injured claimant indisputably innocent of any participatory fault, could only have misled and distracted the jury from its principal duty to determine whether—in view of the prima facie violations of the relevant Vehicle Code sections—respondent, *and respondent alone*, had acted reasonably. (See Evid. Code, § 669; *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897]; *Lucas* v. *Southern Pacific Co.* (1971) 19 Cal.App. 3d 124, 140-141 [96 Cal.Rptr. 356].)

Moreover, the trial court's inexplicable authorization of commencement of jury deliberations, notwithstanding the temporary absence of a juror, seriously undermined both parties' constitutional right to a jury trial. (Cal. Const., art. I, § 16.) As the majority candidly recognizes, the record sheds no light as to when and at what stage of the deliberations the absent juror returned to fulfill his duties. Our highest state court has recently declared (in the context of a substituted alternate juror): "We agree with plaintiff that the principles set forth in *Collins* apply to civil as well as criminal cases. The right to a jury trial in civil cases is also guaranteed by article I, section 16 of the California Constitution, and the provisions of the statute governing the substitution of jurors in civil cases (Code Civ. Proc., § 605) are the same as the ones governing criminal cases (Pen. Code, § 1089). The same considerations require that each juror engage in *all* of the jury's deliberations in both criminal and civil cases. The requirement that at least nine persons reach a verdict is not met unless those nine reach their consensus through deliberations which are the common experience of all of them. [Fn. omitted.]" (*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 584 [153 Cal.Rptr. 213, 591 P.2d 503]; italics added.)

Clearly, a jury verdict which is the likely product of deliberations involving less than the full panel membership cannot represent their combined common experiences. Thus, under the teachings of *Griesel*, the failure of the trial court to advise the full panel to disregard any past deliberations and to begin deliberations de novo upon Mr. Pottinger's return constituted error. (Cf. *Griesel* v. *Dart Industries, Inc., supra*, 23 Cal.3d at p. 585.)*

*The majority's reliance on the consensual procedure which was followed cannot cure the error. The right to a civil jury trial as constitutionally guaranteed may be

waived affirmatively only in the manner prescribed by statute. (Cal. Const., art. I, § 16; *Turlock Golf etc. Club* v. *Superior Court* (1966) 240 Cal.App.2d 693, 699 [50 Cal.Rptr. 70].) No waiver is demonstrated herein. Nor can counsel's consent to a juror's temporary [medical] absence excuse compliance with the statutory method of waiver or otherwise sanction incomplete jury deliberations.