[No. B048516. Second Dist., Div. Three. Aug. 8, 1991.]

DONALD L. VAUGHN et al., Plaintiffs and Respondents, v.
MOHAMMED IQBAL NOOR, Defendant and Appellant.

COUNSEL

Gilbert, Kelly, Crowley & Jennett, Clifford H. Woosley and James M. Fischer for Defendant and Appellant.

Gary J. Bryant for Plaintiffs and Respondents.

**OPINION**

**HINZ, J.**—

### INTRODUCTION

Defendant and appellant Mohammed Iqbal Noor (Noor) appeals the judgment entered following a jury verdict in the amount of $90,000 in favor of plaintiffs and respondents Donald L. Vaughn and Betty Vaughn (the Vaughns) for wrongful death of their son. Noor contends the trial court committed prejudicial error when it failed to give the jury a "start anew" instruction after a juror was replaced by an alternate juror.

We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 1987, Jimmy Lee Vaughn, the Vaughns' son, was struck and killed by a 1972 yellow Porsche traveling at a high rate of speed. The disputed factual issue at trial was the identity of the driver of the Porsche.

An eyewitness to the accident, Colin Hadlow, testified at trial that at 1:10 a.m., as he crossed Ventura Boulevard, he had to run to avoid being hit by the yellow Porsche which was traveling 70 m.p.h. or possibly more. He heard a bang and turned to see the body of a person, crossing the street behind him, falling through the air, hitting the rear windshield, then the ground. The Porsche almost stopped, but then took off. The eyewitness saw

two occupants, one dark and one fair, in the car. However, he could not tell which person was the driver. The dark occupant was not Black but olive complected, which the witness associated with a middle eastern nationality. He identified Noor as someone in the courtroom with that sort of complexion. Another eyewitness was unable to determine how many people were inside the Porsche.

Noor, who was in the travel business, testified he drove his Porsche to a Reuben's Restaurant on Cahuenga Boulevard to coordinate the awarding of prizes as a promotion of his business. He also had arranged to meet a colleague to deliver airline tickets. Because he left the tickets in his office near downtown, he agreed to accompany his colleague to the office to retrieve them. Noor drove his Porsche to a location on Cahuenga Boulevard adjacent to a nearby freeway onramp, where he had agreed to meet his colleague. There he parked the Porsche, entered his colleague's Mercedes Benz, and they proceeded to the office. They then drove back to the Reuben's Restaurant where they stayed until closing, which was approximately 1:30 a.m. They chatted in the parking lot for about 15 minutes and then drove to the location where Noor's car had been parked. Noor then discovered his Porsche was not there. He attempted to notify the police, but had difficulty due to the inexperience of a recently recruited officer manning the front desk. Noor gave the officer taking the stolen vehicle report a Long Beach address. The call was not logged by the officer until several hours after the accident, the department's policy being to log it when the official report was taken.

The Porsche was found by police the next day about one and a half blocks from Noor's North Hollywood home. The ignition had been "punched," a method used by thieves to steal cars. There was evidence that Noor had a mail box located near the scene of the accident.

Noor's explanation of the evidence was that his Porsche was registered at the Long Beach address. He resided at the Long Beach address intermittently to reduce his commute time while employed as a salesperson at Cerritos Ford. Noor testified he had no access to his mail box after closing hours. An employee of the mail service, called by plaintiffs, testified that the business was closed at the time of the accident and she did not know if Noor had a key which would provide access.

The jury was given a special verdict form. Question No. 1 asked, "Was the defendant on the date and time in question driving his vehicle that struck and killed Jimmy Lee Vaughn?" The form instructed, "If you answer Question No. 1 'No' as to the defendant, sign and return this verdict. If you answer

Question No. 1 'Yes' as to the defendant, then answer Question No. 2." Question No. 2 was the total amount of damages sustained by the plaintiffs.

The trial judge instructed the jury, concluding with a special instruction for the two alternates who were being sent to the jury room along with the other jurors: "You are not to participate in the deliberations in any manner whatsoever. Should one of the jurors have an emergency or something then we will swear one of the two of you in. In the meantime you're not to nod your head yes or shake your head no or smile in agreement or in any way participate in it. The value of having you there is that you can listen to the negotiations and if we need you then you will have had the benefit of at least listening without participation."

The jurors retired to deliberate at 1:30 p.m. on a Thursday. On the following Tuesday at 11:55 a.m., the jury posed a question to the trial judge, stating they had reached a yes verdict on question No. 1 but could not reach a verdict on the amount of damages. The jury asked whether the award amount required a three-fourth majority vote. The judge indicated that the question required nine or more jurors to concur.

At this point, the trial court excused one of the jurors due to a dental emergency and seated one of the alternates. The judge instructed as follows: "I must indicate to you you have been present in all of the deliberations and you've had the opportunity of knowing what has gone on up to this point; however, now is the point where you can put in your imput [*sic*] and it would be improper for the jury to just go in there and immediately vote a verdict without listening to your imput [*sic*], at least for whatever you may think, so there has to be some additional discussion. I'm not saying it has to be one minute or one hour. [¶] With that, is every one ready for lunch? Do what you want with them, Mr. Bailiff." The record is not clear as to whether the jurors went to lunch. The reporter's transcript indicates that at 12:00 the jury resumed deliberations.

At 2:05, the jury returned with a verdict, finding Noor liable in the amount of $90,000. However, when the jury was polled, it was found that only eight jurors responded "yes" to question No. 1, three responded "no" and one juror did not vote.

The trial judge asked to see counsel at the side bar. Court and counsel conferred at the bench. Noor's counsel moved for a mistrial and Vaughns' counsel first proposed bringing back the dismissed juror, but also argued there was no problem with the jury going back and redeliberating the liability issue with the alternate juror.

The trial judge then told the jury in open court that, although there was a consensus before the one juror was excused, there was no verdict. The jury foreman described what had happened: "[T]he yes verdict was reached last night whereas juror No. 3 had participated in the vote. The reason the present juror number three did not vote on it is because she was not involved in the verdict on Question No. 1."

The trial judge stated, that because there had been no verdict on the issue of liability, ". . . the court is going to have to . . . send you back in to deliberations and see if you are able to reach a consensus on liability with nine votes. So any vote that you may have taken on liability up to this point is dis—has to be disregarded by the court and you're going to have to tackle that issue anew." After a pause in proceedings, the jury returned at 2:20 with the verdict, this time with nine of the twelve jurors, including the alternate, finding Noor liable.

Noor appeals.

## CONTENTIONS

Noor contends the trial court committed reversible error in failing to instruct the jury to begin deliberations anew when, after the jury had deliberated two and a half days, it replaced a juror with an alternate.

The Vaughns contend, (1) the trial court was not required to give the *Griesel*[1] jury instruction; (2) the jury instructions given complied with the Supreme Court's holding in *People* v. *Valles* (1979) 24 Cal.3d 121 [154 Cal.Rptr. 543, 593 P.2d 240, 15 A.L.R.4th 1116]; and (3) the jury verdict would have been the same even after extended deliberations.

## DISCUSSION

### 1. *Appealability*

■ The Vaughns argue that Noor's failure to request an instruction regarding the juror substitution precludes the issue on appeal. The instructional problem here was a matter of correct jury procedure, not a statement of the law applicable to a resolution of the factual issues before the jury.[2]

---

[1]*Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 583-585 [153 Cal.Rptr. 213, 591 P.2d 503], relied upon by Noor.

[2]See *Orient Handel* v. *United States Fid. & Guar. Co.* (1987) 192 Cal.App.3d 684, 699 [237 Cal.Rptr. 667] (failure to request an instruction on the meaning of a "material fact," as the term is used in fraud instructions); *Null* v. *City of Los Angeles* (1988) 206 Cal.App.3d 1528,

Noor's counsel objected strongly to the belated consideration of the liability issue by the alternate juror, moving for a mistrial. As in *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, "[Noor's] failure to request this [the start anew instruction] does not bar him from asserting error in the instruction that was given. . . ." (*Id.,* at pp. 583-584, fn. 4.)

## 2. *The Jury Instructions*

In *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, the jury had deliberated for seven days in the personal injury action before the alternate was seated. Relying on principles declared in *People* v. *Collins* (1976) 17 Cal.3d 687 [131 Cal.Rptr. 782, 552 P.2d 742], the Supreme Court held the trial court erred in failing to instruct the jury to begin deliberations anew at the time the alternate was substituted for the discharged juror.

In *Collins, supra,* the court had held in a criminal case the substitution of an alternate juror after commencement of deliberations was constitutional only if the court instructed the jury to set aside and disregard all past deliberations and begin deliberating anew. (17 Cal.3d at p. 694.)

Addressing the question in the *Griesel* case, the court stated, "We agree with plaintiff that the principles set forth in *Collins* apply to civil as well as criminal cases. The right to a jury trial in civil cases is also guaranteed by article I, section 16 of the California Constitution, and the provisions of the statute governing the substitution of jurors in civil cases (Code Civ. Proc., § 605 [now Code Civ. Proc., § 234]) are the same as the ones governing criminal cases (Pen. Code, § 1089). The same considerations require that each juror engage in all of the jury's deliberations in both criminal and civil cases. The requirement that at least nine persons reach a verdict is not met unless those nine reach their consensus through deliberations which are the common experience of all of them. Accordingly, we construe section 605 of the Code of Civil Procedure to require that the court instruct the jury to disregard all past deliberations and begin deliberating anew when an

1535 [254 Cal.Rptr. 492] (substantial evidence test cannot be applied to theory of law upon which no instructions were requested).

The Vaughns cite *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 948 [160 Cal.Rptr. 141, 603 P.2d 58], for the proposition, "It is settled that a party may not complain on appeal that an instruction correct in law is too general or incomplete unless he had requested an additional or qualifying instruction. [Citations.]"

The California Supreme Court in *Agarwal* goes on to state, "However, it is equally settled . . . that they are deemed to have excepted to every instruction given and are therefore not barred by their failure to offer an alternative instruction from asserting error in the instruction as given," citing Code of Civil Procedure, section 647, and *Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d 578, 583-584. (25 Cal.3d at p. 949.)

alternate juror is substituted after jury deliberations have begun. (See *People v. Collins, supra*, 17 Cal.3d at p. 694.)" (*Griesel* v. *Dart Industries, Inc., supra*, 23 Cal.3d 578, 584-585, fn. omitted.)

■ The Vaughns point to the fact that the alternate was present during all of the jury's deliberations. Quoting dicta in *People* v. *Valles, supra*, 24 Cal.3d 121, they argue that ". . . the jury should be instructed to begin its deliberations anew *to the extent necessary to permit the former alternate to fully participate*. (See *People* v. *Collins* (1976) 17 Cal.3d 687, [ ].)" (*Id.*, at p. 128, italics added.)

However, the *Valles* case did not concern the *substitution* of a juror with an alternate. Rather, the court merely held a defendant could not complain on appeal of the *presence* of an alternate juror in the jury room during deliberations when his counsel stipulated to the procedure and there was no showing of any participation by the alternate in the deliberations or that her presence had any effect on the other jurors or her presence was prejudicial to the appellant's right. (24 Cal.3d at p. 127.) In approving the procedure, the court stated, "Toward expediting disposition of a case, the court and counsel may well determine that the particular case calls for such innovation." (*Id.*, at p. 127.) It was in this context that the comment, cited by the Vaughns, regarding jury instructions in the event of substitution, appeared.

That this may be a reasonable instruction under some circumstances does not support affirmance in this case. Contrary to the suggestion in *Valles*, the trial court here failed to give an instruction sufficient to "permit the former alternate to fully participate." The jury had reached a consensus on the first issue before the alternate was substituted for the excused juror. The trial court's instruction at this point did not make it clear that the jury had to redeliberate this first issue all over again. The trial judge's comments could easily have been interpreted to apply to the second issue only. Indeed, when the jury was later polled, it was evident that the new juror did not in fact participate in the deliberations on issue number one.

To correct this, the trial court told the jury, "[s]o any vote that you may have taken on liability up to this point is dis—has to be disregarded by the court and you're going to have to tackle that issue anew." The instruction referred to disregarding their "vote," and did not specifically call for "deliberation anew." The judge's brief comment did not insure the full participation of the newly seated juror. Indeed, after participating in the deliberations on the second issue, the amount of damages, it is likely the new juror would be predisposed to finding liability. Also, the circumstances were such that a

new juror may have found it difficult to offer any input, where the jury had believed it had finished its task. Absent extremely clear, direct instructions from the trial court, the necessary deliberations cannot be presumed.

■ As explained in *Griesel* v. *Dart Industries, Inc.*, *supra*, 23 Cal.3d 578, the instructions to set aside and disregard past deliberations and begin deliberations anew is necessary, ". . . to protect the right to have each juror engage in all of the jury's deliberations, an essential element of the right to a jury trial. . . . 'Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations.' ([*People* v. *Collins, supra*, 17 Cal.3d 687,] at p. 693.)" (At p. 584.)

Although held to be permissible in special circumstances and by stipulation of the parties (*People* v. *Valles, supra*, 24 Cal.3d 121, 127), it is difficult to appreciate *any* advantage to allowing the presence of an alternate juror during deliberations. The alternate cannot participate—not even communicate reactions through facial expressions or movements. Yet, if called on to substitute for one of the jurors, it is absolutely essential that the required *interaction* occurs among all the members of a jury. When an alternate substitutes for one of the original members, and the newly constituted jury begins deliberations, the jury must be instructed to begin anew. Rather than facilitate interaction among the jurors, the alternate's observations during the preceding deliberations and the other jury member's awareness of the alternate's former presence in the jury room, as a mute statue, make it virtually impossible for them to create the interaction required to "protect the right to have each juror engage in all of the jury's deliberations . . . ." (*Griesel, supra*, 23 Cal.3d at p. 584.) We therefore look with disfavor on the practice of allowing alternates in the jury room.

The failure to insure adequate deliberations on the liability issue in this case requires reversal. Under the circumstances, where the vote was close, and the result depended upon the vote of the alternate, the error was prejudicial to Noor.

## DISPOSITION

Judgment reversed. Noor is awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 23, 1991. Mosk, J., was of the opinion that the petition should be granted.