## GIBBONS *v.* VAN ALSTYNE.

(*Supreme Court, General Term, Third Department.* February 24, 1890.)

**1. ANIMALS—SHEEP-KILLING DOGS—RIGHT TO KILL.**
Though one may be justified in killing another's dog, he has no right to go on the owner's premises for that purpose.

**2. SAME—EVIDENCE.**
In an action for the wrongful killing of a dog, evidence that, nearly a week prior to the killing, defendant's sheep had been worried by dogs, is inadmissible, in the absence of any showing that plaintiff's dog had anything to do with that occasion.

**3. JUSTICES OF THE PEACE—PROCEDURE—SUMMONING JURY.**
It is improper for the justice to instruct the constable that the parties to an action were farmers, and wanted a farmer's jury, and that he was not to summon jurors from the village; but, in the absence of anything to the contrary, it will be assumed that the constable did his duty, and summoned a jury without reference to any particular class of men.

**4. SAME—INTRUSION INTO JURY-ROOM.**
The presence of the justice in the jury-room, while the jury were deliberating, without consent of the parties, is reversible error.

Appeal from county court.

Action by John Gibbons against Edward P. Van Alstyne. A verdict and judgment rendered in favor of defendant in the justice's court was reversed by the county court, and defendant appeals.

Argued before LEARNED, P. J., and LANDON and FISH, JJ.

*John Cadman,* for appellant.    *E. R. Harder,* for respondent.

FISH, J. The plaintiff in the justice's court complained that on or about the 11th of November, 1888, the defendant wrongfully entered the premises

of plaintiff, and then and there wrongfully shot and killed plaintiff's dog, to his damage of $50, and demanded judgment accordingly. The evidence was clear and undisputed that defendant did, early in the morning of November 11th, come upon plaintiff's premises with a shotgun, with hostile intention and purpose, and there shot and killed the plaintiff's dog. It was a clear case of trespass upon plaintiff's land, for which defendant was liable. Even if the killing of the dog might of itself have been justifiable, defendant clearly had no right to come upon plaintiff's premises for that purpose, and to commit the act. Whether or not, under the circumstances, the defendant might have been justified in killing the dog, if he had done so without committing trespass, is not necessary to be decided. The verdict and judgment of the justice's court, therefore, in favor of defendant, was unwarranted; and upon this ground alone the judgment was properly reversed by the county court.

*First.* There is no pretense that the animal, at the time of the shooting, was chasing or worrying sheep. The testimony offered by plaintiff was very strong to the effect that the dog was at home, on plaintiff's premises, continually, from the time he was let out in the morning until he was so killed. But, suppose the defendant's version of the facts is true: that the dog had gone down to his premises, and stood outside of gate of defendant, about 50 or 60 feet away from the sheep, barking at them; that, upon seeing defendant, it immediately left, and went home, without offering any further annoyance to the sheep. That circumstance did not justify the defendant in going to and upon the premises of plaintiff to execute judgment upon the animal. If the dog had no value, it was, nevertheless, a trespass upon the land of plaintiff, for which he was entitled to a verdict against defendant.

*Second.* On the trial, against the objection of plaintiff, defendant was allowed to show that on the night of the 5th of November, nearly a week prior to the killing of plaintiff's dog, defendant's sheep had been worried, and some of them killed, by dogs. There was no attempt to show that plaintiff's dog had anything to do with that occasion, and it could not furnish a justification to defendant's hostile entry on plaintiff's premises on the 11th of November. Such evidence was well calculated to create prejudice in the minds of the jury unfavorable to plaintiff, and to work sympathy for defendant. Plaintiff's motion to strike it out was denied by the justice's court. The admission of this evidence was also an error for which the judgment of the justice's court ought to have been reversed.

*Third.* It appears, by affidavits read in the county court on the argument of the appeal, which affidavits are not controverted, that, when the justice of the peace delivered the *venire* to the constable to summon a jury, he (the justice) told the constable that the parties were both farmers, and wanted a farmer's jury, and, in substance, instructed the constable not to summon any jurors from the village; also, that after the case had been submitted to the jury, and while they were out, deliberating, and before agreeing upon a verdict, the justice, without consent of either party, went into the jury-room, and stayed there about five minutes; that the door leading into the jury-room was, at least part of the time, open, and divers persons standing near the open door of the jury-room.

It does not appear that the direction by the justice to the constable influenced the action of the constable in selecting the jury. It was an improper thing for the justice to do. The constable should have been left entirely free and independent to summon an impartial jury, without reference to any particular class of men. It certainly has the appearance of the justice having some object favorable to one party or the other. However, as it is not proved that the constable acted upon the direction in this case, we may allow the presumption to prevail that he did his duty, and hold that no error was committed. See *People* v. *Kelly,.* 31 Hun, 225; *Mandeville* v. *Reynolds*, 68 N. Y. 528.

There is more difficulty upon the question of the justice entering the jury-room.   We have nothing before us showing what, if anything, passed between him and the jury while he was there; but it can hardly be presumed that he remained in the room so long as five minutes without holding conversation.   It was another censurable act of officiousness on the part of the justice.   Possibly, while in the jury-room, he might have reminded them, as he did the constable, that the defendant was a farmer.   The same presumption does not hold here as it would if the justice was where he had a right to be, in the discharge of his duties.   The justice had no more right in the jury-room, while the jury were deliberating, than any other person.   Suppose he did converse with the jury,—either answered questions or made suggestions relating to the case.   Then his presence there was clearly error.   Suppose, however, we assume that he said nothing, but remained in the room, listening to the discussions of the jury, and they simply acted under the surveillance of the justice.   Can it be said that his presence did not affect the decision of the jury?   If the justice could stay there with propriety, so could all the other people who attended the trial.   The affidavits of jurors cannot be read to impeach their verdict after it has been rendered, so that it may be impossible to show, in any given case, whether or not an intruder in the jury-room did converse with the jury, or what he said.   It is a great deal safer to condemn such an intrusion by the magistrate as tending to affect the ultimate result, and create a good ground for review.   *Benson* v. *Clark*, 1 Cow. 258; *Neil* v. *Abel*, 24 Wend. 185; *Taylor* v. *Betsford*, 13 Johns. 487; *Valentine* v. *Kelly*, 7 N. Y. Supp. 184.   It has, however, been held that affidavits in support of allegations of error in fact may not be read as to any matter within the knowledge of the justice; that such matter can only be brought before the appellate court by means of the return of the justice.   Section 3057, Code Civil Proc.   See *Vallen* v. *McGuire*, 2 N. Y. Supp. 381.   There may be room to question the soundness of that decision, but it is best to have uniformity of decisions in matters of practice of this kind.   So that, no matter of principles being involved, that authority may be safely followed.   Let judgment of county court be affirmed, with costs.   All concur.