[Crim. No. 2571. Second Appellate District, Division One.—January 24, 1935.]

THE PEOPLE, Respondent, v. LES BRUNEMAN, Appellant.

Jerry Giesler for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

CONREY, P. J.—Judgment was pronounced against the defendant pursuant to the verdict of a jury which found him guilty of kidnaping for purposes of extortion and robbery, in violation of section 209 of the Penal Code of California, as charged in the indictment. Defendant appeals from the judgment and from an order denying his motion for a new trial.

Appellant contends that for many stated reasons the verdict is contrary to the law and contrary to the evidence. He also contends that the court erred in its failure to grant his motion to strike out certain portions of the evidence. For reasons which will hereinafter appear, it has become unnecessary for this court to discuss or decide· upon the propositions above stated.

Appellant further contends that the court erred to his prejudice in permitting the two alternate jurors to accompany the jury of twelve members upon their retirement to deliberate, and in permitting said alternate jurors to remain with said jury during their deliberations, and that this procedure upon the part of the trial court was in violation of section 7 of article I of the Constitution of the state of California. We are of the opinion that this assignment of error must be sustained.

At the opening of the trial twelve jurors were sworn to try the cause; and it appearing to the court that this would probably be a protracted trial, two other persons were sworn as alternate jurors. It was further ordered that the jury, including the alternate jurors, remain in the custody of the sheriff during the trial. At the close of the trial, after the conclusion of arguments of counsel to the jury, and after the instructions had been read by the court to the jury, the following proceedings occurred with relation to the alternate jurors: "The Court: Gentlemen, do you wish to stipulate, in order to determine the meaning of the 1933 amendment to the code regarding the custody of alternate jurors, that the two alternate jurors here shall accompany the 12 regulars to the jury room; that the Court shall advise them that they shall listen to the discussion of the other jurors, but that it shall definitely instruct them that they are not to address any other member or members of the jury upon any subject of the case, or connected therewith? Mr. Giesler: Yes, your Honor. The Court: It is stated by the law that the alternates shall be kept in the custody of the sheriff. Mr. Giesler: I haven't read that law since it was adopted, but I don't remember whether it says the alternate jurors shall accompany them to the jury room. The Court: It does not say. Mr. Giesler: However, with your Honor's admonition, I have no objection. The Court: It says they shall be kept in the custody of the Sheriff. It doesn't say whether they shall go to the jury room, or not; yet if one or more of them should have to act, it probably would be desirable that they hear the discussions of the other jurors up to that point. Mr. Giesler: I have no objection to that. Mr. Veitch: We adopt the stipulation. The Court: Then the two alternates will accompany the 12 regular jurors, and will remain with them at all times, but, Mrs. Farr and Mr. White, you must understand, that so far as talking is concerned, you are to remain under the same admonition that you have heretofore been under throughout the trial of the case. You must not address any regular juror on any subject of or connected with the case, or concerning any matter, person, or issue, involved in it. It will be your duty to remain with them and listen to their discussion, but in this instance you have ears and no talk. Now, Mrs. Farr, do you understand that you are not to address any member of the regular jury on

any subject connected with this case? Juror Farr: I do. The Court: How about you, Mr. White; do you understand that? Juror White: I do."

Section 1089 of the Penal Code, which provides for alternate jurors in criminal cases, was added to that code in the year 1895. It was first amended in the year 1927. In the original section and also in the section as amended in 1927, the last two paragraphs of the section read as follows: "They shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff during the trial of the cause, such alternate jurors shall also be kept in confinement with the other jurors; and except, as hereinafter provided, shall be discharged upon the final submission of the case to the jury.

"If, *before the final submission* of the case, a juror die, or become ill, so as to be unable to perform his duty, the court may order him to be discharged and draw the name of an alternate, *who shall then take his place in the jury box,* and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

Said section 1089 of the Penal Code was again amended in the year 1933. By that amendment those last two paragraphs were changed so that they read as follows: "They shall obey the orders of and be bound by the admonition of the court, upon each adjournment of the court; but if the regular jurors are ordered to be kept in the custody of the sheriff during the trial of the cause, such alternate jurors shall also be kept in confinement with the other jurors; and upon final submission of the case to the jury such alternate jurors shall be kept in the custody of the sheriff and shall not be discharged until the original jurors are discharged, except as hereinafter provided.

"If at any time, whether before *or after* the final submission of the case to the jury, a juror die or become ill, so as to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, *who shall then take his place in the jury box,* and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

Giving attention now to the 1933 amendment, we observe first that by the amendment the provision for keeping an alternate juror "in confinement with the other jurors" during the trial, was supplemented by a further provision that upon final submission of the case to the jury such alternate jurors must "be kept in the custody of the sheriff". This additional requirement became necessary because by amendment of the last paragraph of the section, the provision for discharge of a disqualified regular juror and the substitution of an alternate juror, was extended so as to cover contingencies which might arise after final submission of the case to the regular jury and before the return of any verdict. But under the 1933 amendment, the same as before, it was not until after the discharge of the disqualified regular juror and the drawing of the name of the alternate, that the alternate juror was to "take his place in the jury box". ■ We are satisfied that in enacting section 1089 of the Penal Code, even as amended in the year 1933, the legislature did not intend to, and in fact did not, authorize the court to admit into the jury room, "alternate jurors", under the circumstances shown by the record in this case. In the case at bar it appears that the verdict was returned by the original regular jury. Neither one of the alternate jurors was ever authorized in any way to share in the return of the verdict. Nevertheless they were in the jury room at all times during the deliberations of the jury and until the time of return of the verdict.

■ "The right of trial by jury shall be secured to all, and remain inviolate. . . . " (Constitution of California, art. I, sec. 7.) "It is well settled that the right of a trial by jury, guaranteed by the state Constitution (art. I, sec. 7), is the right as it existed at common law, and any act of the legislature attempting to abridge that right is void." (*People* v. *Kelly*, 203 Cal. 128, 133 [263 Pac. 226], citing *People* v. *Powell*, 87 Cal. 348, 355 [25 Pac. 481, 11 L. R. A. 75].)

■ "Without doubt, one of the essentials of a jury at common law is that it be composed of twelve persons, and that twelve persons, not more nor fewer, shall pass upon and determine the issues of fact. (*Jennings* v. *State*, 134 Wis. 307 [14 L. R. A. (N. S.) 862, and note, 114 N. W. 492]; 16 R. C. L., p. 221; L. R. A. 1917A, p. 91 et seq., note to *Minneapolis etc. Co.* v. *Bombolis*.) Where the procedure

provided by section 1089 is followed, the jury before whom the case is actually tried does not at any time consist of more or fewer than twelve persons. Prior to the substitution of the 'alternate juror', the case is being tried before the original twelve jurors." (*People* v. *Peete,* 54 Cal. App. 333, 364 [202 Pac. 51]; year 1921.) In the Peete case, the verdict was returned by a jury in which one of the jurors was an "alternate juror" who had been selected and sworn as provided by section 1089 of the Penal Code, and who during the trial took the place of a regular juror who had become incapacitated by reason of illness. On appeal it was held that this procedure did not impair any essential incident of the common-law right of trial by jury, but on the contrary that the statute, said section 1089 as then in force, made only a reasonable regulation or condition respecting the enjoyment of that right.

 Now we come to these questions: "Was the presence in the jury room, of the 'alternate jurors', to whom the case had not been submitted for decision, an invasion of the right of trial by jury; and was it an invasion of that right in such a vital way that the error could not be cured by consent of the defendant's attorney?"

The courts have held, many times, that the presence of an outsider in the jury room is a sufficient ground for an order setting aside the verdict. In *Goby* v. *Wetherill,* 2 K. B. Div. 674, it was said: "The principle is that the jury are entitled, and bound, to deliberate in private. If a stranger, whether an officer of the court, or not, is present for a substantial time during their deliberations, then the verdict is vitiated." In *People* v. *Knapp,* 42 Mich. 267 [3 N. W. 927, 929, 3 Am. Rep. 438] (opinion by Mr. Justice Cooley), the court said: "It is not claimed that the officer can with propriety be allowed to be within hearing when the jury are deliberating. Whether he does or does not converse with them, his presence to some extent must operate as a restraint upon their proper freedom of action and expression. When the jury retire from the presence of the court, it is in order that they may have opportunity for private and confidential discussion, and the necessity for this is assumed in every case, and the jury sent out as of course where they do not notify the court that it is not needful. The presence of a single other person in the

room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out.'' Other cases, to like effect, are *Rickard* v. *State,* 74 Ind. 275; *State* v. *Wroth,* 15 Wash. 621 [47 Pac. 106]; *Gibbons* v. *Van Alstyne,* 56 Hun, 639 [9 N. Y. Supp. 157]. In *State* v. *Wroth, supra,* where it appeared that the judge went to the jury room in response to a request from the jury, and received from them some communication, the Supreme Court held that this was error. Here it was said: ''In the discharge of his official duty the place for the judge is on the bench. As to him the law has closed the portals of the jury room and he may not enter.'' And in response to the suggestion that the judge said nothing to the jury, and hence that his conduct could not have been prejudicial to the defendant, the Supreme Court held that a defendant is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. ''His right in this respect goes to the very substance of trial by jury.'' We think that these observations apply in their full force to the presence in the jury room, of an ''alternate juror'' at a time when the case has not been submitted for *his* verdict.

We conclude, therefore, that the presence in the jury room of the ''alternate jurors'', to whom the case had not been submitted for decision, was an invasion of the defendant's right of trial by jury. And from the same premises we further conclude that this was an error so far destructive to the invaded right, that the error could not by mere consent be rendered harmless. In *People* v. *O'Neil,* 48 Cal. 257, the defendant consented to a trial by a jury of eleven men. In deciding the appeal the Supreme Court said: ''The Attorney-General confesses the error; and it may be added that the authorities cited by the defendant establish the proposition that a jury in a criminal action must, within the meaning of the Constitution, consist of twelve men.''

If in the case at bar it be suggested that there were only twelve jurors who returned a verdict, it must be answered that to an extent which cannot be seen or measured, the process of agreement upon such verdict may have been, and probably was, influenced by the presence of fourteen persons,—the twelve jurors plus the two outsiders.

For the foregoing reasons, the judgment of conviction is reversed and the order denying defendant's motion for a new trial is reversed.

Houser, J., concurred.

York, J., dissented.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1935.