[No. H028855. Sixth Dist. July 6, 2006.]

MICHAEL BRASSFIELD, Plaintiff and Appellant, v.
MORELAND SCHOOL DISTRICT, Defendant and Respondent.

**COUNSEL**

Baker & Anjomi, David Baker and Nieve Anjomi for Plaintiff and Appellant.

Needham, Davis, Kirwan & Young, Mark E. Davis and Matthew Tamel for Defendant and Respondent.

**OPINION**

**MIHARA, J.**—Plaintiff Michael Brassfield appeals from a judgment in favor of defendant Moreland School District (Moreland). He claims that reversal is required because an alternate juror (the alternate) was present in the jury room for 15 minutes at the beginning of the jury's deliberations before her presence was discovered and she was removed. We conclude that the error was not reversible per se and that the presumption of prejudice was rebutted. Consequently, we find the error harmless and affirm the judgment.

## I. Background

Brassfield sued Moreland for breach of contract and negligent misrepresentation, and the action was tried to a jury. After the trial jurors had been instructed and had gone into the jury room to deliberate, the court clerk and the bailiff discovered that the alternate was in the jury room with the trial jurors. The bailiff removed the alternate from the jury room after about 15 minutes of deliberations.

The trial jurors were returned to the courtroom, and the trial judge instructed them to "completely disregard anything that you heard the alternate say, [and] to begin your deliberations all over again without consideration of the input from the alternate." The judge then queried the jurors.

"Having said that, may I see a show of hands of anyone who heard the alternate say anything? [¶] Okay. There's several of you that have raised your hands. [¶] Did she say anything about the trial as opposed to anything about just, hi, how are you, so on and so forth? Pleasantries, just like that. Did anybody hear her say anything other than pleasantries? [¶] Oh, I see four, five, six hands. [¶] Okay. I'm going to ask that whatever it was she said, because I don't want to get into the substance of that, you just act like you never heard it. Now, there's testimony that you heard during the trial and you were told to disregard it. And I'm going to ask you to do the same thing, the same thing with respect to the statement that you heard the alternate make, and I'll call you by number and ask for your assurance that you'll be able to do that."

The judge then asked Jurors Nos. 3, 4, 5, 10, 11 and 12 if "you'll be able to do that," and each of them responded "Yes." The judge then continued: "Is there any reason to think that the six of you will not be able to do that? [¶] Is there anyone who will not be—that you'll be unable to do that? [¶] Okay. I see no hands. I'm satisfied. [¶] Okay, ladies and gentlemen, given the hour, I think what I'm going to do is just call it quits for the day because by having you come back tomorrow and start all over again that will in my mind satisfy my uneas[i]ness . . . ."

Brassfield immediately moved for a mistrial, and his trial counsel submitted a written motion for mistrial first thing the following morning. The judge recounted that "more than seven jurors" indicated that they had heard the alternate say something, but only six jurors had heard anything other than "pleasantries." Brassfield's trial counsel asserted that Juror No. 6 had raised his

hand to indicate that he had heard the alternate say something more than pleasantries, but the judge had not admonished Juror No. 6 to ignore what the alternate had said or received his assurance that he could do so. The judge responded "I don't believe that's correct." Brassfield's trial counsel also argued that "admonishments can't you know, unring the bell that has rung in this matter."

While this discussion was going on, the judge and counsel were informed that, after just 45 minutes of deliberations that morning, the jury had reached a verdict. The judge brought the jurors into the courtroom and accepted the verdict. However, before revealing the verdict, the judge made the following statement. "Now, ladies and gentlemen, I had some discussion with you yesterday about the fact that the alternate was permitted to go into the room yesterday. And you were—did you all hear my instruction to begin deliberations anew no matter what you heard the alternate say and to start all over with the 12 of you in the room? Did you all hear that instruction? Is there anybody that did not hear that instruction? Let me see a show of hands? [¶] Okay. There are no hands."

The judge then asked each juror individually if he or she had heard the alternate "say anything" and "what you heard her say." Jurors Nos. 2, 6, 7 and 8 stated that they did not hear the alternate say anything. Jurors Nos. 9 and 12 told the judge that they had heard the alternate say something "cordial." Jurors Nos. 1, 3, 4 and 11 said they could not remember what they had heard the alternate say. Juror No. 10 recalled hearing the alternate ask "whether July 1st was a Monday." Juror No. 5 remembered the alternate saying something about "some kind of preliminary vote." The judge asked Jurors Nos. 5 and 10 if they had been able to "put that discussion out of your mind and begin anew." Juror No. 5 said "Yes." Juror No. 10 said "It was not relevant to the discussion."

The jury's defense verdict was then pronounced in open court. Brassfield renewed his mistrial motion, and the judge denied it. Judgment was entered in favor of Moreland, and Brassfield filed a timely notice of appeal.

## II. Analysis

In his opening brief, Brassfield claims that the presence of the alternate in the jury room during deliberations was a "structural defect," which mandated reversal without any consideration of prejudice. In his reply brief, he argues that, even if this type of error is reversible only where prejudicial, the

presumption of prejudice that attaches to jury misconduct has not been rebutted.

The presence of an alternate in the jury room during deliberations is not a novel occurrence. In *People v. Bruneman* (1935) 4 Cal.App.2d 75 [40 P.2d 891] (*Bruneman*), the trial judge, with the consent of both counsel, directed the two alternate jurors to accompany the trial jurors to the jury room for deliberations but instructed the alternates to be silent during the trial jurors' deliberations. (*Bruneman*, at pp. 77–78.) On appeal, the court concluded that this was a serious error that violated the defendant's right to trial by jury. Analogizing this error to a trial by only 11 jurors, the Court of Appeal concluded that reversal was required even though the defendant's trial counsel had consented to the presence of the alternates. (*Bruneman*, at p. 81.) "[T]o an extent which cannot be seen or measured, the process of agreement upon such verdict may have been, and probably was, influenced by the presence of fourteen persons,—the twelve jurors plus the two outsiders." (*Bruneman*, at p. 81.)

In *People v. Britton* (1935) 4 Cal.2d 622 [52 P.2d 217] (*Britton*), the trial judge, apparently without the consent of counsel, instructed the alternate juror to join the trial jurors in the jury room during deliberations but admonished her not to say or do anything during deliberations. (*Britton*, at p. 623.) On review, the California Supreme Court explicitly endorsed *Bruneman* and found that the presence of the alternate was reversible error. (*Britton*, at pp. 622–623.) The dissent argued that the error was harmless because it could be presumed that the alternate obeyed the trial judge's instruction and said and did nothing during deliberations, and therefore the alternate's presence did not influence the jury's verdict. (*Britton*, at pp. 623–624 (dis. opn. of Curtis, J.).)

In *People v. Valles* (1979) 24 Cal.3d 121 [154 Cal.Rptr. 543, 593 P.2d 240] (*Valles*), as in *Bruneman*, both counsel stipulated to the presence of the alternate in the jury room with the trial jurors during deliberations, and the alternate was admonished to say nothing and " 'mind her own business.' " (*Valles*, at p. 123.) The California Supreme Court acknowledged both *Bruneman* and *Britton*, but it held that the defendant was estopped to challenge the procedure because his trial counsel had stipulated to it. (*Valles*, at pp. 123–124.) "[T]he presence of alternates in the jury room during deliberations is not necessarily detrimental to a defendant's right of trial by jury and . . . defense counsel may stipulate to such procedure." (*Valles*, at p. 125.) The court noted that the alternate's disobedience of the instruction to be silent would be subject to "the standard rule concerning juror miscon-

duct ... namely, that it is presumed prejudicial to the defendant unless the contrary appears." (*Valles*, at p. 128.) However, as there was no claim that the alternate had disobeyed the court's instruction, there was no basis for a claim of juror misconduct. (*Valles*, at p. 123.)

The dissent in *Valles* conceded that the error was not reversible per se, but it argued that the issue was viable notwithstanding counsel's stipulation, the presumption of prejudice had not been rebutted, and reversal was therefore required. (*People v. Valles, supra*, 24 Cal.3d at pp. 131–132 (dis. opn. of Mosk, J.).)

In *People v. Oliver* (1987) 196 Cal.App.3d 423 [241 Cal.Rptr. 804] (*Oliver*), a court reporter was erroneously present in the jury room during deliberations. The Court of Appeal noted that *Valles* had implicitly accepted the premise that such error was not reversible per se (*Oliver*, at p. 434), and it applied a harmless error standard of review. (*Oliver*, at pp. 435–436 & fn. 7.)

■ We reject Brassfield's contention that the simple presence of an alternate in the jury room during deliberations is reversible per se. While *Bruneman* and *Britton* suggested that this type of error necessarily led to reversal, it is clear that the modern view after *Valles* is that this type of error is "not necessarily" prejudicial. (*People v. Valles, supra*, 24 Cal.3d at p. 125.) Thus, this type of error is properly analyzed as a species of jury misconduct to which a presumption of prejudice applies and which does not merit reversal if the error is shown to have caused no prejudice.

Brassfield contends that the presence of an alternate in the jury room during deliberations is reversible per se *unless there was a stipulation by counsel to the alternate's presence*. He points out that the holding in *Valles*, where there was such a stipulation, was based on estoppel due to the stipulation, and estoppel is inapplicable here because there was no stipulation. While it is true that *Valles*'s *holding* is not applicable here, *Valles*'s *rationale* is highly relevant to the issue presented here. The reasoning underlying the holding in *Valles* was that the presence of an alternate in the jury room was "not necessarily" prejudicial and was appropriately analyzed under the standard rule for juror misconduct that prejudice is presumed but may be rebutted. Indeed, even the dissent in *Valles*, which rejected estoppel based on the stipulation, accepted the validity of this reasoning. While *Valles* did not decide the issue before us, its rationale provides strong support for our holding that this type of error is not reversible per se.

■ We therefore proceed to Brassfield's backup argument that the presumption of prejudice was not rebutted. " 'As a general rule, juror misconduct "raises a presumption of prejudice that may be rebutted by proof that no prejudice actually resulted." [Citations.]' [Citation.] In determining whether misconduct occurred, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence. [Citations.] Whether prejudice arose from juror misconduct, however, is a mixed question of law and fact subject to an appellate court's independent determination.' " (*People v. Majors* (1998) 18 Cal.4th 385, 417 [75 Cal.Rptr.2d 684, 956 P.2d 1137].)

Only two disputed factual questions were resolved by the trial judge. First, the trial judge found that the alternate had been present in the jury room for no more than 15 minutes, rather than the 17 minutes claimed by Brassfield's trial counsel. Second, the trial judge concluded that six trial jurors had acknowledged hearing the alternate say something "substantive," not seven jurors as Brassfield's trial counsel contended. Since the trial judge had personal knowledge of these facts, we defer to his factual findings.

We exercise independent review with respect to whether the facts shown at the hearing below rebutted the presumption of prejudice. The alternate was present during the first 15 minutes of the jury's deliberations, and six of the trial jurors heard the alternate say something other than mere pleasantries. Only two of the trial jurors could remember what the alternate had said, and the recalled statements were neither significant nor prejudicial. Immediately after learning of the error, the trial judge instructed *all* of the trial jurors to "completely disregard anything that you heard the alternate say, [and] to begin your deliberations all over again without consideration of the input from the alternate." Each of the six trial jurors who had heard something more than pleasantries also individually affirmed that they could disregard what they had heard and start their deliberations anew.

■ We are convinced that the presumption of prejudice was rebutted. The trial jurors were swiftly and unambiguously instructed to disregard any input from the alternate and to begin their deliberations anew. They affirmed that they could do so, and there is not the slightest indication in the record that they were unable to do so. While the jury reached a verdict fairly swiftly, this fact alone does not tend to show prejudice because the record reflects that the alternate provided no substantive input and that the trial jurors disregarded her nonsubstantive input and recommenced their deliberations the next day as instructed. As the error was not prejudicial, reversal is not merited.

## III.   Disposition

The judgment is affirmed.

Rushing, P. J., and McAdams, J., concurred.