Filed 3/12/14

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B243462 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA065680) |
| v. | |
| JAIME GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shari Silver, Judge. Reversed in part and affirmed in part as modified.

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Thomas C. Hsieh, Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of **BACKGROUND and DISCUSSION, parts II-V.**

## INTRODUCTION

Defendant was convicted of attempted murder, various firearm offenses, and participating in a gang. In the published portion of this opinion, we hold that even if the trial court directed alternate jurors to be in the jury room during juror deliberations, which is not at all clear, the judgment does not need to be reversed because there was no showing that the alternate jurors participated in the deliberations or that there was any other prejudice, presumed or otherwise.

## BACKGROUND

During the period from January 2008 to about January 14, 2009, the Los Angeles Police Department and various federal law enforcement agencies participated in a task force investigating "the Mexican Mafia and their affiliated gangs and drug dealers in the San Fernando Valley." The task force targeted about 30 people, including defendant, Jaime Garcia, who were suspected of narcotics activity and sales.

As part of its investigation, the task force obtained authorization to wiretap defendant's phone. Recordings of 12 of defendant's phone calls, made between January 9 and 14, 2009, were played at trial. Some of the recorded phone calls were between defendant and Daniella Fernandez, Jessica Torrez, Yvonne Echevarria, and Monique Lopez in which defendant tried to learn the whereabouts of Luis Giron. In another phone call, defendant asked Haley Higdon to bring him a handgun. Other recorded phone calls were between defendant and Giron in which they argued about transactions between them involving two vehicles, drugs, and jewelry.

Giron testified that about 3:45 p.m., on January 14, 2009, he was working on his truck's battery in the driveway of a house. Defendant and a woman pulled up in a silver or gray Jaguar. Defendant got out of the car and approached Giron. Giron asked defendant, "What's up?" Defendant responded that he had been looking for Giron. Defendant pulled a gun and placed it to Giron's head, behind his ear. Giron moved his head, causing the gun to lower to his neck. Defendant fired a single shot into Giron's

neck. Defendant said, "This is what is going to happen to you, mother f-----." Defendant returned to his car and left. An ambulance took Giron to the hospital. Police officers interviewed Giron at the hospital. Giron identified defendant from a six-pack photographic lineup as the person who shot him.

About 3:45 p.m. on January 14, 2009, Los Angeles Police Department Officer Adriana Munguia stopped a silver or gray Jaguar for speeding about a half a mile from the scene of Giron's shooting. Defendant was driving. Echeverria and defendant's girlfriend, Patty Luna, were in the car. Luna appeared to have blonde highlights. The car was registered to defendant's brother, Rolando Garcia. Officer Munguia was unaware of the shooting and only issued defendant a warning.

Later that night, the police looked for defendant's car because it matched the description of the car used in a shooting. About 9:00 p.m., the police spotted defendant driving a Jetta and stopped and presumably arrested him. Luna was seated in the front passenger seat. The police searched the Jetta and found a blonde wig, two plastic baggies that contained a "white crystalline substance resembling methamphetamine," and a Jaguar key.

Los Angeles Police Department Officer Cesar Flores testified as the prosecution's expert on the Brownstone Locos gang. According to Officer Flores, there were about 100 members of the Brownstone Locos gang. The gang's primary activities were narcotics sales, homicides, robberies, vandalism, possession of weapons, and burglaries. Officer Flores testified that he spoke with defendant at defendant's home on April 20, 2008. Defendant provided Officer Flores with a history of the Brownstone Locos gang. According to defendant, the Brownstone Locos gang was founded in the late 1980's when he, his brother Rolando, and about 12 other members of the Pacoima Van Nuys Boys broke off to form a new gang. Officer Flores opined that in January 2009, defendant was an active member of the Brownstone Locos and the gang's sole "shotcaller" or leader. Based on the wiretap recordings and his research, Officer Flores believed that defendant was buying and selling controlled substances.

A jury convicted defendant of attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664, subd. (a)/187, subd. (a)[1]), possession of a firearm by a felon (§ 12021, subd. (a)(1)), assault with a firearm (§ 245, subd. (a)(2)), assault with a semiautomatic firearm (§ 245, subd. (b)), and street terrorism (gang participation) (§ 186.22, subd. (a)). The jury found true the allegations that in the commission of the attempted murder, defendant and a principal personally used a firearm (§12022.53, subds. (b) & (e)(1)), personally and intentionally discharged a firearm (§ 12022.53, subds. (c) & (e)(1)), and personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subds. (d) & (e)(1)). The jury also found true gang enhancement allegations within the meaning of section 186.22, subdivision (b)(1)(C) as to the attempted murder, assault with a firearm, and assault with a semiautomatic firearm offenses, and within the meaning of section 186.22, subdivision (b)(1)(A) as to the possession of a firearm by a felon offense. As to the assault with a firearm and assault with a semiautomatic firearm offenses, the jury found true the allegations that defendant personally used a firearm (§ 12022.5) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). As to all offenses, the trial court found true the allegations that defendant suffered four prior convictions within the meaning of section 667.5, subdivision (b), one of which convictions it struck; and one offense within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) through (d). The trial court further found true the allegation as to the attempted murder and assault offenses that defendant suffered a prior conviction within the meaning of section 667, subdivision (a)(1). The trial court sentenced defendant to 71 years four months to life in state prison.

On appeal, defendant contends that the two alternate jurors improperly sat with the jury during deliberations, which contention we discuss in the published portion of this opinion. We discuss other contentions in the unpublished portion of this opinion and reverse as to certain convictions, order the abstract of judgment modified, and otherwise affirm the judgment. We reverse defendant's convictions for assault with a firearm and

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

gang participation, and order the abstract of judgment modified to remove defendant's one year four month sentence for his gang participation conviction and to reflect a $40 court security fee and a $30 court building assessment on defendant's assault with a semiautomatic firearm conviction. We otherwise affirm the judgment.

## DISCUSSION

### I. Presence of the Alternate Jurors During Jury Deliberations

Defendant, who was convicted, inter alia, of attempted murder, contends that the trial court committed reversible error when it directed the two alternate jurors[2] to accompany the seated jurors to the jury deliberation room.

#### A. *Background*

After instructing the seated and alternate jurors, the trial court stated, "In terms of the two alternates, as soon as we finish right here, the bailiff . . . will explain to the alternates and the other jurors how this works." The bailiff then swore to take charge of and keep together the jury, to not speak to the jury or allow anyone else to speak to it on any subject connected to the case except by order of the trial court, and to return the jury to the court when it reached a verdict. The bailiff further swore to "take charge of the alternate jurors and keep them apart from the jury while they are deliberating on the cause, until otherwise instructed by the court . . . ."

After the bailiff was sworn, the trial court asked him, "Do you want all of the jurors to go in the deliberation—" The bailiff responded, "Yeah. All 14." The trial court said, "Okay. [¶] All 14 jurors, please go into the jury deliberation room. [¶] The alternates, since you won't be deliberating, just leave your documents on the seat. [¶] Everybody, take your documents. You will be given the exhibits, the verdict forms, and questions forms." After the seated and alternate jurors left the courtroom, the trial court

---

[2]    Originally, there were four alternate jurors. By the time of jury deliberations, two had been excused.

stated, "The record will reflect that all jurors, including the two alternates, have gone into the exhibit [sic] room." After the jury returned its verdicts, the trial court sent all the jurors, including the alternate jurors, back to the jury deliberation room.

### B. Relevant Legal Principles

Section 1089 provides, in part, "upon final submission of the case to the jury the alternate jurors shall be kept in the custody of the sheriff or marshal and shall not be discharged until the original jurors are discharged, except as hereinafter provided. [¶] If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors." There is no express statutory prohibition against alternate jurors being in the jury room during deliberations. There has been, however, "[a] long-established policy, designed to protect the independence of the jury, [to require] that they deliberate in secret, without outside communication or observation . . . ." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 320, p. 373; see *People v. Bruneman* (1935) 4 Cal.App.2d 75, 78-80.)

In *People v. Britton* (1935) 4 Cal.2d 622 (*Britton*), the California Supreme Court addressed the propriety of an alternate juror's presence in the jury room during deliberations. The court in *Britton* approved the opinion in *People v. Bruneman, supra,* 4 Cal.App.2d 75, a then recent Court of Appeal opinion, and, over the dissent of two justices, adopted as its own the Court of Appeal's opinion in *Britton* in pertinent part as follows: "Appellants claim reversible error because when the jury retired to deliberate the court directed that the alternate juror should retire to the juryroom with the jury, and that this was error even though the court instructed such alternate juror that while she might listen to the deliberations of the jury, she should not express any opinion or participate by word or action in those deliberations. [¶] Subsequent to the appeal herein

6

this identical question was decided in *People v. Bruneman*[*, supra,*] 4 Cal.App.(2d) 75 [40 Pac.(2d) 891], and we agree with the conclusions therein stated, that the presence of the alternate juror in the juryroom while the jury was deliberating upon its verdict was reversible error." (*Britton, supra,* 4 Cal.2d at p. 623, internal quotation marks omitted.) *Britton* has been read to establish a rule of per se reversal when an alternate juror was present with the regular jury during deliberations even when the trial court instructed the alternate juror to not express any opinion or participate in the deliberations in any way. (*People v. Adame* (1973) 36 Cal.App.3d 402, 406.)

In *People v. Valles* (1979) 24 Cal.3d 121 (*Valles*), a case decided by the California Supreme Court, the defendant and the prosecutor stipulated that an alternate juror be present during jury deliberations, but that the alternate was not to participate in the deliberations in any way. (*Id.* at p. 123.) On appeal, the defendant did not argue that the alternate disobeyed the trial court's instruction by participating in the deliberations. (*Ibid.*) Instead, the defendant argued that the "alternate's mere presence in the jury room during deliberations constituted reversible error." (*Ibid.*) The court concluded that "the presence of alternates in the jury room during deliberations is not necessarily detrimental to a defendant's right of trial by jury and that defense counsel may stipulate to such procedure." (*Id.* at p. 125.) The court held that the stipulation estopped defendant from obtaining a reversal based on the presence of the alternate in the jury room during jury deliberations. (*Id.* at p. 123.) The court stated, "The alternate should, of course, be instructed that he is not to participate in the jury's deliberations in any manner except by silent attention unless he is required by the court to take the place of an original juror. *If this instruction is disobeyed*, the standard rule concerning juror misconduct applies, namely, that it is presumed prejudicial to the defendant unless the contrary appears. [Citation.]" (*Id.* at p. 128, italics added.)

As stated in *Brassfield v. Moreland School Dist.* (2006) 141 Cal.App.4th 67, 72, (*Brassfield*) "[t]he dissent in *Valles* conceded that the error was not reversible per se, but argued that the issue was viable notwithstanding counsel's stipulation, the presumption of prejudice had not been rebutted, and reversal was therefore required. (*People v. Valles,*

7

*supra,* 24 Cal.3d at pp. 131-132 (dis. opn. of Mosk, J.).)"  The court referred to *People v. Oliver* (1987) 196 Cal.App.3d 423 in which a court reporter was improperly in the jury room during deliberations and in which the court "noted that *Valles* had implicitly accepted the premise that such error was not reversible per se, . . . and . . . applied a harmless error standard of review." (*Brassfield, supra,* 141 Cal.App.4th at p. 72.)  The court in *Brassfield* then said that it "reject[ed] Brassfield's contention that the simple presence of an alternate in the jury room during deliberations is reversible per se." (*Ibid.*) The court concluded that such an error is "properly analyzed as a species of jury misconduct to which a presumption of prejudice applies and which does not merit reversal if the error is shown to have caused no prejudice." (*Ibid.*)  The court stated, "as there was no claim that the alternate had disobeyed the court's instruction, there was no basis for a claim of juror misconduct." (*Brassfield, supra,* 141 Cal.App.4th at p. 72, citing *Valles, supra,* 24 Cal.3d at p. 123.)

The court's conclusion in *Valles, supra,* 24 Cal.3d 121 that the "presence of alternates in the jury room during deliberations is not necessarily detrimental to a defendant's right to trial by jury" is consistent with the United States Supreme Court's later opinion in *United States v. Olano* (1993) 507 U.S. 725 (*Olano*) in which the Supreme Court reversed a finding that the presence of alternate jurors during jury deliberations violated Federal Rule of Criminal Procedure 24(c) (rule 24(c)) and was reversible per se under the "plain error" standard of Federal Rule of Criminal Procedure 52(b).  In *Olano*, the Supreme Court held that the presence of alternate jurors during jury deliberations violated rule 24(c), but that such an error was not the kind that affects a defendant's substantial rights independent of its prejudicial impact, the respondents had not made a showing of prejudice, and there was no reason to presume prejudice. (*Olano, supra,* 507 U.S. at p. 737.)  The Supreme Court stated, "Although the presence of alternate jurors does contravene '"the cardinal principle that the deliberations of the jury shall remain private and secret,"' [citation], the primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence. 'If no harm resulted from this intrusion [of an alternate juror into the jury room,] reversal would

be pointless.' [Citation.] We generally have analyzed outside intrusions upon the jury for prejudicial impact. [Citations.]" (*Id.* at pp. 737-738.)

### C. Analysis

Respondent argues that the record does not demonstrate that the two alternate jurors were present in the jury room during jury deliberations. That the alternate jurors were sent back with the seated jurors does not mean that they entered the jury room itself and stayed there. Moreover, that there was no objection by defense counsel suggests that the alternates were not present.[3]

Even if the alternate jurors were present in the jury room during deliberations, defendant has failed to demonstrate prejudice because the record does not show misconduct by either alternate juror from which prejudice may be presumed. If the alternate jurors were present in the jury room during deliberations, it was because they obeyed the trial court's directive, as they were required to do. (§ 1089 ["they shall obey the orders of and be bound by the admonitions of the court, upon each adjournment of the court . . ."].) Thus, there was no juror misconduct that would result in a rebuttable presumption of prejudice from the alternates being with the seated jurors during deliberations.

Because, as established by the authorities, an alternate juror's presence during jury deliberations is not necessarily detrimental to a defendant's right of trial by jury, there would be juror misconduct and presumed prejudice if the trial court instructed the alternate juror not to participate in deliberations and the alternate juror disobeyed the instruction. (*Valles, supra,* 24 Cal.3d at pp. 125, 128.) The trial court instructed the alternate jurors not to participate in deliberations. In addition, after instructing the seated jurors, the trial court instructed the alternate jurors, "[Y]ou are still bound by the admonition that you are not to converse among yourselves or with anyone else on any

---

[3] Respondent does not contend that defendant has forfeited the issue by his failure to object.

subject connected with this trial, or to form or express any opinion until the case is submitted to you, which means until such time as you are substituted in for one of the twelve jurors who will begin deliberating on the case tomorrow morning.  This also means that you are not to decide how you would vote if you were deliberating with the other jurors."

To the extent the trial court sent the deliberating and alternate jurors to the jury room, the trial court told the alternate jurors, "[S]ince you won't be deliberating, just leave your documents on the seat."  There is no indication in the record that either of the alternate jurors disobeyed the trial court's instructions and participated in jury deliberations in any manner.  Defendant has failed to demonstrate that the alternates engaged in any misconduct or that their presence during jury deliberations, if that occurred, caused him prejudice—presumed or actual.  Thus, any presence of the alternates jurors during jury deliberations is not a basis for reversal.

## II.    Defendant's Assault with a Firearm Conviction

Defendant was convicted of assault with a firearm (§ 245, subd. (a)(2)) and assault with a semiautomatic firearm (§ 245, subd. (b)) based on the same firearm discharge— i.e., the single gunshot fired into Giron's neck.  Defendant contends that his conviction for assault with a firearm must be reversed because assault with a firearm is a lesser included offense of assault with a semiautomatic firearm.  Respondent agrees as do we.

"A semiautomatic firearm assault cannot be committed without also committing a firearm assault.  Therefore, firearm assault is a lesser included offense of a semiautomatic firearm assault. [Citations.]  A defendant cannot be convicted of both an offense and a lesser included offense. [Citations.]" (*People v.* Martinez (2012) 208 Cal.App.4th 197, 199.)  Because defendant's assault with a firearm offense was a lesser included offense of assault with a semiautomatic firearm, his assault with a firearm conviction is reversed. (*Ibid.*)

### III. Defendant's Sentence Enhancements on His Assault with a Semiautomatic Firearm Conviction

Defendant argues that the trial court improperly imposed on his assault with a semiautomatic firearm conviction 10-, four-, and three-year terms respectively for the gang (§ 186.22, subd. (b)(1)(C)), personal use of a firearm (§ 12022.5), and personal infliction of great bodily injury (§ 12022.7) enhancements.[4]  Instead, defendant argues, the trial court was permitted, under section 1170.1, subdivisions (f) and (g), only to impose the 10-year gang enhancement and either the four-year personal use of a firearm enhancement or the three-year personal infliction of great bodily injury enhancement. The trial court properly sentenced defendant.

Assault with a semiautomatic firearm is a serious but not violent felony.  (§§ 1192.7, subd. (c)(31), 667.5, subd. (c).)  The gang enhancement for assault with a semiautomatic firearm is five years.  (§ 186.22, subdivision (b)(1)(B).)  When personal use of a firearm (§ 12022.5) or personal infliction of great bodily injury (§ 12022.7) allegations are found true with respect to a conviction for assault with a semiautomatic firearm, the assault offense becomes a violent felony (§ 667, subd. (c)(8)) and the punishment for an accompanying gang enhancement is elevated to 10 years (§ 186.22, subd. (b)(1)(C)).

Section 1170.1, subdivisions (f) and (g) provide:

"(f)  When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense.  This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury.

---

[4]     Defendant makes the same claim with respect to his assault with a firearm conviction.  Because we have reversed that conviction, we do not need to address defendant's sentencing argument as to that conviction.

"(g) When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for being armed with or using a dangerous or deadly weapon or a firearm."

Because the trial court used either defendant's personal use of a firearm or personal infliction of great bodily injury to elevate the gang enhancement from five to 10 years, defendant contends, section 1170.1, subdivisions (f) and (g) prevented the trial court from also imposing sentence on the enhancement used to elevate the gang enhancement term—i.e., if the trial court elevated the gang enhancement term based on defendant's personal use of a firearm, the trial court could not impose the four-year term for that enhancement in addition to imposing the 10-year gang enhancement. In *People v. Vega* (2013) 214 Cal.App.4th 1387, we recently considered and rejected defendant's contention.

In *People v. Vega, supra,* 214 Cal.App.4th 1387, the defendant was convicted of attempted voluntary manslaughter, and the jury found true the allegations that the defendant committed the offense for the benefit of a gang (§ 186.22, subd. (b)(1)(C)), that he personally used a firearm (§ 12022.5, subd. (a)), and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)). The trial court imposed the 10-year gang enhancement and the four-year personal use of a firearm enhancement and stayed the three-year personal infliction of great bodily injury enhancement. (*People v. Vega, supra,* 214 Cal.App.4th at p. 1393.) We held that imposition of the four-year personal use of a firearm enhancement was permitted because the jury also found true the personal infliction of great bodily injury allegation which, by itself, elevated the attempted voluntary manslaughter offense to a violent felony. (*Id.* at p. 1395.) We further held that the trial court could not have imposed and left unstayed the three-year personal infliction of great bodily injury enhancement without violating subdivision (g) of section 1170.1. (*Ibid.*)

12

In this case, the trial court imposed and stayed, under section 654, defendant's sentences for the substantive offense of assault with a semiautomatic firearm and each of the accompanying enhancements. Because the trial court stayed the sentence on defendant's personal infliction of great bodily injury enhancement, defendant's sentence complied with *People v. Vega, supra,* 214 Cal.App.4th 1387.

## IV.    Defendant's Street Gang Participation Conviction

Defendant contends that insufficient evidence supports his gang participation conviction (§ 186.22, subd. (a)[5]), the trial court gave an erroneous instruction on that offense, and the trial court erred in failing to stay his 16-month consecutive sentence on that offense under section 654. We reverse defendant's gang participation conviction because it is not supported by sufficient evidence.[6]

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient

---

[5]    Section 186.22, subdivision (a) provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

[6]    Because we reverse defendant's gang participation conviction for lack of sufficient evidence, we do not need to address defendant's alternative arguments.

substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation]." (*People v. Zamudio, supra,* 43 Cal.4th at pp. 357-358.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence." (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

"The elements of the gang participation offense in section 186.22(a) are: First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. [Citation.]" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*).)[7] The phrase "that gang" in section 186.22, subdivision (a) "refers back to the gang in which the defendant is an active participant." (*Id.* at p. 1131.) "[T]o satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22(a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. (See § 186.22, subd. (i).)" (*Id.* at p. 1132.) Thus, the third element is not satisfied when a gang member commits a felony when acting alone. (*Id.* at pp. 1131-1132.)

Here, the trial court instructed the jury that the "felonious criminal conduct" that defendant was alleged to have promoted, furthered, or assisted was possession for sale of a controlled substance, assault with a firearm, and attempted murder. There is insufficient evidence to support defendant's conviction for violating section 186.22, subdivision (a), because there is no evidence that defendant promoted, furthered, or

---

[7]     *Rodriguez* was decided shortly after the trial in this case.

14

assisted another Brownstone Locos member in the possession of a controlled substance for purposes of sales, in the assault of Giron with a firearm, or in the attempted murder of Giron. (*Rodriguez, supra,* 55 Cal.4th at pp. 1131-1132.)

Respondent concedes that "there was no direct evidence that any of the persons who helped [defendant] in shooting Giron or whom [defendant] cooperated with in drugs sales were members of [defendant]'s gang, Brownstone Locos," but argues, "[n]evertheless, there was sufficient circumstantial evidence from which a juror could reasonably conclude that [defendant] actively participated in the Brownstone gang and willfully promoted, furthered and assisted the possession of sale of controlled substances by and with members of his own gang." Respondent does not argue that there is circumstantial evidence that a Brownstone Locos member other than defendant participated in Giron's shooting.

With respect to possession of a controlled substance for purposes of sales, respondent argues that the circumstantial evidence showed that defendant discussed with and collaborated in the sale of drugs with members of other gangs, and a reasonable inference from such discussions and collaborations was that defendant and those members of other gangs "were not merely assisting each other individually, but also the members of each other's gangs in such conduct." Respondent's argument fails for a number of reasons.

First, the prosecution had to prove that defendant promoted, furthered, or assisted another Brownstone Locos gang member in committing a specific felony.[8] (*Rodriguez,*

---

[8] In her rebuttal closing argument to the jury, the prosecutor incorrectly argued to the jury that the prosecution did not have to show that defendant promoted, furthered, or assisted another Brownstone Locos gang member in a felony to prove the gang participation offense. The prosecutor argued, "And when counsel talks about count 5, and, oh, he doesn't know anyone other than Brown—it doesn't say 'Brownstone.' It says if you help to further, promote—by committing a crime, help to further, promote your gang, doesn't mean that all the crimes have to be committed with other people from you gang. It could be other gang members that he is working with." As noted above, the California Supreme Court decided this issue after the trial in this case was over. (*Rodriguez, supra,* 55 Cal.4th at p. 1131.)

15

*supra,* 55 Cal.4th at pp. 1131-1132; *People v. Castenada* (2000) 23 Cal.4th 743, 749.) Evidence that defendant assisted a member of another gang in the commission of a felony is not evidence that defendant assisted a member of his own gang in the commission of the same felony. Second, the trial court instructed the jury that it could find defendant guilty of the gang participation offense based on his "possession for sale of a controlled substance," not based on his "sale of a controlled substance." Possession of a controlled substance for purposes of sales and sale of a controlled substance are different and separate offenses. (See *People v. Murphy* (2005) 134 Cal.App.4th 1504, 1508 [possession for sale of a controlled substance is not a lesser included offense of sale of a controlled substance because possession is not an essential element of the sales offense, e.g., "one can broker a sale of a controlled substance that is within the exclusive possession of another"], disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228; but see *People v. Rosales* (1964) 226 Cal.App.2d 588, 592 ["Since every sale includes possession, the crime of illegal possession of narcotics is therefore a necessarily included offense in the offense of sale of narcotics"].) Thus, evidence concerning defendant's participation in drug sales did not support the gang participation charge based on possession of a controlled substance for purposes of sales.

Third, there is no evidence that the substance defendant possessed was a controlled substance, and there is no evidence that defendant possessed the substance for purposes of sales. The only evidence related to defendant's possession of a controlled substance came from a police officer who participated in the search of the car defendant was driving when he was stopped and, presumably, arrested. That officer testified that he recovered from the car two baggies that contained a "while crystalline substance resembling methamphetamine." The prosecution did not present evidence that the substance recovered from the car was methamphetamine, or evidence that the amount or packaging of the substance suggested that the substance was possessed for purposes of sales. Accordingly, there was no circumstantial evidence that defendant promoted, furthered, or assisted another Brownstone Locos member in the possession of a controlled substance for purposes of sales.

16

Although respondent concedes that there is no direct evidence that any Brownstone Locos member other than defendant participated in Giron's assault or attempted murder, and does not argue that there was circumstantial evidence that any member of the Brownstone Locos participated in those crimes, we note that there was an attenuated connection between another Brownstone Locos member—defendant's brother—and those crimes. Defendant drove his brother's car to Giron's shooting. Such evidence, however, is insufficient to establish that defendant's brother participated in Giron's shooting as an aider an abettor—and thus that a second Brownstone Locos gang member participated in the assault and attempted murder—because no evidence was presented that even suggests that defendant's brother provided the car to defendant, or that if he did provide the car to defendant, he did so with the knowledge that defendant was going to shoot Giron and with the intent or purpose of aiding Giron's assault or attempted murder. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164 ["A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime"]; *People v. Lee* (2003) 31 Cal.4th 613, 624 ["to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill"].) Accordingly, the abstract of judgment is ordered modified to delete defendant's sentence of one year four months for his gang participation conviction.

## V.     **Court Security Fee and Court Building Assessment**

Respondent contends that the trial court erred in imposing a $40 court security fee (§ 1465.8, subd. (a)(1)) and a $30 court building assessment (Gov. Code, § 70373) on only three of defendant's convictions (attempted murder, possession of a firearm by a felon, and gang participation) rather than all five counts. Having conceded that

17

defendant's assault with a firearm conviction should be reversed and thus the court security fee and court building assessment need not be imposed on that conviction, respondent contends that the trial court also should have imposed the court security fee and court building assessment on defendant's assault with a semiautomatic firearm conviction. Defendant does not dispute respondent's contention. We agree that the trial court failed to impose the proper security fees and assessments.

The court security fee (§ 1465.8, subd. (a)(1)) and court building assessment (Gov. Code, § 70373, subd. (a)(1)) must be imposed on every count. Accordingly, the abstract of judgment is ordered modified to reflect a $40 court security fee and a $30 court building assessment on defendant's assault with a semiautomatic firearm conviction.

## DISPOSITION

Defendant's convictions for assault with a firearm and gang participation are reversed. The abstract of judgment is ordered modified to delete defendant's one year four month sentence for his gang participation conviction and to reflect a $40 court security fee and a $30 court building assessment on defendant's assault with a semiautomatic firearm conviction. The judgment is otherwise affirmed.

**CERTIFIED FOR PARTIAL PUBLICATION**


MOSK, J.


We concur:


TURNER, P. J.


MINK, J.*

---

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.